GENERAL McDONALD, The. See Case No. 11.238.

GENERAL MUT. LIFE INS. CO. (SHERWOOD v.). See Case No. 12,776.

GENERAL PARKHILL, The. See Case No. 10,755a.

---

## Case No. 5,319.
### The GENERAL SHERIDAN.
[2 Ben. 294.] 1

District Court, S. D. New York. March, 1868.

BREACH OF CHARTER—LIEN ON VESSEL—CHARTER NOT BEGUN.

1. Where a vessel was chartered in New York, for a voyage from ports in Florida to

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

New York, and did not go to any of the ports of loading named, but returned to New York without having entered on the performance of the charter, the charter party containing a clause whereby the parties bound the vessel and the merchandise to be laden on board, each to the other, for the faithful performance of the covenants therein contained: *Held*, that an action in rem against the vessel, to recover the damages occasioned to the charterer by this breach of the charter, would not lie, and that the libel must be dismissed.

[Cited in The Williams, Case No. 17,710. Distinguished in The James McMahon, Id. 7,197. Cited in Scott v. The Ira Chaffee, 2 Fed. 406; The Monte A., 12 Fed. 332; The Missouri, 30 Fed. 384; The Caroline Miller, 53 Fed. 137.]

2. Under such a charter, any duty that may be violated by the owner or master before the cargo is put on board, is not a duty of the vessel, or one for the breach of which a lien on the vessel is created or can be enforced.

[Cited in The William Fletcher, Case No. 17,692; The Guiding Star, 53 Fed. 943.]

On the 19th of March, 1867, the schooner General Sheridan was chartered to Eberhard Faber, by a written charter party entered into at New York. The vessel was then at sea, and the charter was for a voyage from one or more of several named places of loading on the west coast of Florida to New York. Faber afterward filed his libel against the vessel in rem, alleging a breach of the charter, in that the vessel did not, as she was required to do by the charter party, proceed to any of the ports of loading therein mentioned, or give notice of her readiness to receive cargo, or take any cargo, but returned to New York without having fulfilled any of the stipulations of the charter party. He claimed damages for such breach to the amount of $5,000, and alleged, that, by a clause in the charter, it was agreed by the parties that the vessel should be bound for the faithful performance of the charter. The claimants excepted to the libel, on the ground that the facts set forth in it did not constitute any lien on the vessel, and were not within the jurisdiction of this court, or enforceable in admiralty.

G. De Forest Lord, for libellant.

Beebe, Dean & Donohue, for claimants.

BLATCHFORD, District Judge. Authority can be found for maintaining the libel in this case. Thus, in the case of The Pacific [Case No. 10,643], decided in 1850, Mr. Justice Nelson, in the circuit court for this district, says, that it is not necessary, in order to give jurisdiction to the admiralty in rem, in the case of a contract, maritime in its nature and object, that the vessel should have entered upon the performance, and that the breach should have occurred in the course of the voyage; and that, if the vessel refuses to receive the cargo on board, when it is at her side ready to be delivered, she is bound, and the party aggrieved is not obliged to look exclusively to the master or owner. But later cases have overruled this view. In the case of The Freeman v. Buckingham, 18 How. [59 U. S.] 182, decided by the supreme court at the December term, 1855, Mr. Justice Curtis, delivering the opinion of the court, says: "Under the maritime law of the United States, the vessel is bound to the cargo, and the cargo to the vessel, for the performance of a contract of affreightment. But the law creates no lien on a vessel as a security for the performance of a contract to transport cargo, until some lawful contract of affreightment is made, and a cargo shipped under it." In the case of Vandewater v. Mills, 19 How. [60 U. S.] 82, decided by the supreme court at the December term, 1856, Mr. Justice Grier, delivering the opinion of the court, says: "If the master or owner refuses to perform his contract, or, for any other reason, the ship does not receive cargo and depart on her voyage according to contract, the charterer has no privilege or maritime lien on the ship for such breach of the contract by the owners, but must resort to his personal action for damages, as in other cases." This view was applied by this court in July, 1857, in the case of Reed v. The Telos [Case No. 11,653]; and in May, 1860, in the case of Torrices v. The Winged Racer [Id. 14,102]. It is true that, in Vandewater v. Mills [supra], the court says that it was no part of the written agreement sued on in that case, that the vessel libelled in rem therein should be hypothecated as security for the performance of the agreement; and, it is urged on the part of the libellant in this case, that the doctrine laid down in Vandewater v. Mills is not applicable to this case, for the reason that by the charter-party in this case, there is an express hypothecation of the vessel. The libel avers that "the parties to the said charter party did also therein and thereby bind themselves, their executors, administrators, and assigns, and the said vessel, freight, tackle, and appurtenances, and the merchandise to be laden on board, each to the other, for the true and faithful performance of all the covenants and agreements therein contained, in the penal sum of the estimated amount of the said charter." This is the usual penal clause inserted in charter parties. Maclachlan, Merch. Shipp. c. 8, p. 334. It is founded on the rule of maritime law stated by Cleirac (597): "Le batel est obligée à la marchandise et la marchandise au batel"; and by Valin (1 Valin, Ord. de Mar. bk. 3, tit. 1, art. 11): "The ship, with her tackle, the freight, and the cargo, are respectively bound by the covenants of the charter party." The express covenant in this charter party binding the vessel to the merchandise to be laden on board, and the merchandise to be laden on board to the vessel, must be construed conformably to the principles of the maritime law, and imports nothing more than would have been held, according to those principles, to be a part of the contract, if the express covenant had not been contained in the instrument. The obligations of the vessel to the merchandise to be laden on board, and of the merchandise to be laden

on board to the vessel, are mutual and reciprocal. Under the covenant, the duty of the vessel, to the performance of which the hypothecation binds her, is to deliver the cargo that may be put on board at the time and place stipulated for such delivery. Any duty that may be violated by the owner or master, before the cargo is put on board, is not a duty of the vessel, or one for the breach of which a lien on the vessel is created or can be enforced. So, too, under the covenant, if the cargo is not laden on board, it is not bound to the vessel, and, therefore, the vessel cannot be in default, though the master or owner may be, for the nondelivery of the cargo. To hold that the vessel was bound to the merchandise to be laden on board, when there was no merchandise laden on board, would be to depart from the express terms of the covenant, and to destroy the mutual and reciprocal character of the obligations of the covenant.

This view of the covenant in the charter party is sustained by the opinion of the circuit court for this district, in the case of The Hermitage [Case No. 6,410]. The charter party in that case contained a clause, whereby, for the fulfilment of the several stipulations of the charter party, each party bound himself to the other—the one, the vessel, freight, and tackle; the other, the merchandise to be laden on board. The charterers put some cargo on board, and then a dispute arose as to some of the provisions of the charter party, whereupon the charterers commenced taking out the cargo, and refused to go on with the charter party. The libellant filed a libel in rem against the cargo, to recover freight, according to the charter party, for the time the vessel was used by the charterers, and damages for the nonfulfillment by them of the charter party. The district court, on exceptions filed to the libel, dismissed it, on the ground that the suit in rem would not lie. On appeal by the libellant, the circuit court (Mr. Justice Nelson) reversed the decree of the district court, and sustained the libel, on the express ground that the cargo had been put on board, and the voyage had, in fact, commenced according to the terms of the charter party, and that the lien on the cargo attached as soon as it was laden on board; and that, so far as the form of remedy was concerned, the case stood in the same position as if the voyage had been broken up by the charterers at any other point in the course of it. And he added: "This case does not fall within that class of cases where nothing has been done under the charter of the vessel, that is, where no goods have been placed on board, and the voyage has not been entered upon; in which cases there can be no lien upon the vessel or cargo under the charter party. In such cases, whether the breach of the agreement is on the part of the owner or of the charterer, there can be no proceeding in rem against the vessel or the cargo, as no lien has attached for the benefit of either party." These views are de-cisive as to the present case. They indicate that the doctrine of the case of The Pacific must have been considered by Mr. Justice Nelson himself as unsound, probably in view of the opinion of the supreme court in the case of Vandewater v. Mills.

The exceptions are allowed, and the libel is dismissed, with costs.