### THE CAROLINE MILLER.

### FORWOOD et al. v. THE CAROLINE MILLER.

(District Court, S. D. New York. November 2, 1892.)

1. SHIPPING—CARRIAGE OF FREIGHT—SHORTAGE—CONTRACT TO SHIP IN FUTURO —LIEN.

　　The steamer C. M., chartered to a line, delivered 189 bales of cotton under a contract of carriage called a "bill of lading," which recited that 200 bales had been received "on dock," to be transported by the C. M., "or by any other steamship of the line." The master had nothing to do with the loading of the steamer or the appointment of the stevedore, and the cotton was received at the dock by the agent of the charterers themselves, and he signed the so-called "bill of lading." The vessel delivered all the cotton she actually received. On suit brought by the transferee of the so-called "bill of lading" to recover the value of 11 missing bales, *held* that, as they never were put aboard the vessel, or came into the possession or under control of the master, the ship was not liable in rem for their value.

2. SAME.

　　The contract of carriage was not a bill of lading, but a contract to ship in futuro, either on the C. M. or any other steamer of the line, and on this option no lien on the ship could arise on such contract alone; and, that fact being patent on the face of the document, a transferee for value was chargeable with notice that the ship could be held only for such bales as were actually laden on board.

In Admiralty. Libel by George P. Forwood and Harold S. Forwood against the steamship Caroline Miller for nondelivery of part of cargo. Libel dismissed.

Cary & Whitridge, for libelants.
Carpenter & Mosher, for claimants.

BROWN, District Judge. The above libel was filed to recover the value of 11 bales of cotton, an undelivered part of 200 bales, alleged to have been shipped on board the steamship Caroline Miller at Brunswick, Ga., by Coles, Simkins & Co., on or about September 29, 1888, under a bill of lading, which was transferred upon the sale of the cotton by the shippers to the libelant.

The Caroline Miller had previously been chartered by the claimant to Coles, Simkins & Co. and was run by the latter as a part of the New York & Brunswick Steamship Line from Brunswick to New York, with through connections to Liverpool. The bill of lading for the 200 bales provided for the transportation of the cotton to New York and delivery there to a connecting steamer for transportation and delivery at Liverpool. The Caroline Miller on her third and fourth voyages to New York under the charter brought 189 bales, which were subsequently delivered at Liverpool. The evidence leaves no doubt that she delivered to the connecting steamship in New York all the bales that were laden on board of her, and all that were delivered to her master at Brunswick. If she is liable at all, therefore, it is only by virtue of the bill of lading, and delivery to the agent of the line.

By the terms of the charter, the owners were to appoint the captain, officers, engineers, firemen and crew, and pay for their provisions and wages; also, for all engine-room stores; and to maintain the vessel in a thoroughly efficient state in hull and machinery for and during the service. The charterers were to pay for coal. The bill of lading was not signed by the master, but by the agent of the New York & Brunswick Line, at Brunswick. The bill of lading, moreover, does not recite or state that the cotton had been received on board, but is as follows:

"Received on dock, (at owner's risk of fire, flood or damage) in apparent good order and condition by the New York and Brunswick Steamship Line, from Coles, Simkins & Co. to be transported by the New York and Brunswick S. S. Line's steamer called the 'Caroline Miller,' now lying in the port of Brunswick, Ga., and bound for New York, to say two hundred bales of cotton, being marked and numbered as in margin, and to be conveyed in and upon said steamship, or in and upon any other steamship of the line, and to be delivered in the like order at the aforesaid port of New York," etc.

The evidence shows, moreover, that the master had nothing to do with the loading of the steamer, or with the appointment of the stevedore; that the Miller lay alongside the dock where other steamers of the line were lying, and that various lots of cotton, without any separation distinguishing for what vessel they were designed, were from time to time brought down and placed upon the dock; and that the master had nothing to do with receiving it, or loading it upon the different steamers.

1. Upon the above facts the steamship is not liable in rem for the missing bales; because they were never put on board of the steamer, nor did they ever come into the possession of the master, or under his control. This subject has been fully discussed by Mr. Justice Blatchford in the case of The Gen. Sheridan, 2 Ben. 294, by Mr. Justice Brown in The Ira Chaffee, 2 Fed. Rep. 401, and finally settled, as it seems to me, in the case of Pollard v. Vinton, 105 U. S. 7, 9–11. In the case last cited there was proof that E. D. Cobb & Co., the agents who had signed the

bill of lading, were the authorized agents of the defendants for that purpose. In the present case, there was no similar proof, and no such authority can be implied without proof. By the charter of the ship, the owners doubtless authorized the master to bind the ship for such goods as the charterers might deliver to him for transportation, whether actually put on board or upon the dock and under the master's control for that purpose. But here the master did not sign any bill of lading, or undertake to bind the ship, and the missing cotton never came under his control. The agent of the New York & Brunswick Steamship Line who signed this shipping document, was not the agent of the shipowner, nor of the master. The delivery of goods to that agent was, therefore, neither a delivery to the master, nor a delivery to the ship. In fact the delivery of the cotton at the dock worked no change in its legal possession; because the cotton belonged to Coles, Simkins & Co., who were themselves the charterers, and the agent who signed the so-called "bill of lading" was their own agent. The cotton, until it was laden on board, remained as completely under the shipper's control as before.

2. Again, this "bill of lading," so called, is not properly a bill of lading at all; but only an executory contract to ship in futuro. It does not state any receipt of the cotton on board, but only that 200 bales were received at the dock, to be shipped thereafter. Besides this, it was not even a contract to carry by the Caroline Miller; but a contract to carry by the Miller "or by any other vessel of the New York & Brunswick Line." It does not purport, therefore, to bind the Caroline Miller for a single bale, and does not purport to be signed by the master or by any officer of the Caroline Miller. The line whose agent signed the document, had an option to send the cotton by any vessel of the line they saw fit, so that no lien on the ship therefor could arise by the contract alone, but only by the actual delivery of the cotton to the ship or to her master, which, as respects the missing bales, was not made. Crenshawe v. Pearce, 37 Fed. Rep. 432, 435; affirmed on this point, 43 Fed. Rep. 803. The facts are patent upon the face of the document. A transferee for value is, therefore, chargeable with notice that the Miller could be held for only so much of the cotton as might be actually laden on board.

3. The so-called "bill of lading" was signed on September 29th. The evidence indicates that the Caroline Miller was probably at sea, since three days is the shortest passage, and there is little doubt that she arrived in New York on October 1st. The proof of the latter point, however, is not technically complete. Though that was definitely sworn to on the direct examination, the cross-examination showed that the witness was testifying from entries made by another clerk than himself. While this circumstance makes the evidence technically imperfect, nevertheless as these entries were in the regular course of business of a shipping house of so high standing as Bowring & Archibald, there is little doubt as to the fact. This circumstance if proved would but add confirmation to the unreasonableness of holding the Miller upon a document like the present. The former considerations, however, are amply sufficient for the decision of the cause, without reference to the last consideration. The libel must be dismissed, with costs.