## Case No. 6,410.

### The HERMITAGE.

[4 Blatchf. 474;[1] 44 Hunt, Mer. Mag. 73.]

Circuit Court, S. D. New York. Oct. 30, 1860.

CHARTER-PARTY—VIOLATION—LIBEL—MISTAKE IN AGREEMENT.

1. Where, under a charter of a vessel, the charterer put a cargo on board, and then took it out and refused to fulfil the charter-party, alleging that it had been violated by the owner of the vessel, and the charter-party gave to the owner a lien on the cargo for a breach by the charterer: *Held*, that the lien attached as soon as the cargo was put on board, and that the owner could libel the cargo in rem, in the admiralty, for the breach.

[Cited in Scott v. The Ira Chaffee, 2 Fed. 406; Blowers v. One Wire-Rope Cable, 19 Fed. 446; The Director, 26 Fed. 710; The Missouri, 30 Fed. 384.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2. Where the meaning of a charter-party is clear, a claim that there was a mistake in it, or that it does not express the intent of the parties, cannot be set up in defence, in a suit in rem, in the admiralty, for a breach of it.

[Cited in The General Sheridan, Case No. 5,319; The Williams, Id. 17,710; The William Fletcher, Id. 17,692; The Monte A., 12 Fed. 332; The Baracoa, 44 Fed. 103; The Guiding Star, 53 Fed. 943.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by Robert Latta, as owner of the bark Hermitage, against the cargo of that vessel, to recover freight under a charter-party, entered into between the libellant and Messrs. Abranches, Almeida & Co., merchants, for the employment of the vessel on a trading voyage from the port of New York to the west coast of Africa, and back to New York, with the privilege of continuing the voyage for a year. The owner engaged to keep the vessel well fitted, tight and staunch, and provided with every requisite necessary for such trading voyage, excepting captain, crew and provisions, and that the whole vessel (with the exception of the cabin, the deck, and necessary room for the accommodation of the crew and stowage of sails and cables) should be at the sole use and disposal of the charterers; and that no goods or merchandise should be laden on board otherwise than from them. The owner also bound himself to receive on board the vessel, during the voyage, all such lawful goods and merchandise as the charterers might think proper to ship. The charterers engaged, on their part, to provide the vessel at all times sufficient cargo for ballast, and to pay for charter or freight, during the voyage, $450 per month, and all foreign and domestic port charges, &c., &c., payable $800 at the expiration of every four months, in New York, and in full on the discharge of the vessel. The charter was to commence when the vessel was in her berth for loading and reported to the charterers, and was to cease when the vessel should have returned and discharged her cargo in New York. For the fulfilment of the several stipulations each party bound himself to the other, the one, the ship, freight and tackle, the other, the merchandise to be laden on board. The cargo was put on board of the vessel in New York, by the charterers, preparatory to the voyage, but, before she started on her voyage, a question arose in respect to the rights of the charterers under the charter, the latter claiming the use of the cabin for the accommodation of passengers to be received on board, which was refused by the owner. Thereupon the charterers commenced taking out the cargo and refused to fulfil the charter-party. The libel was filed to recover freight for the use of the vessel, and damages for the non-fulfilment of the charter-party. The claimants excepted to the libel, and the district court sustained the exception, and dismissed the libel. The libellant appealed to this court.

Erastus C. Benedict, for libellant.
Charles Donohue, for claimants.

NELSON, Circuit Justice. This case does not fall within that class of cases where nothing has been done under the charter of the vessel, that is, where no goods have been placed on board, and the voyage has not been entered upon; in which cases there can be no lien upon the vessel or cargo under the charter-party. In such cases, whether the breach of the agreement is on the part of the owner or of the charterer, there can be no proceeding in rem against the vessel or the cargo, as no lien has attached for the benefit of either party. Here, the voyage had commenced, upon the very terms of the agreement between the parties. The goods were put on board of the vessel, and, if the lien attached at all, it attached as soon as they were laden on board. So far as the form of the remedy is concerned, it is the same as if the voyage had been broken up by the charterers at any other point in the course of the voyage, after the vessel had been out a week, a month, or longer. The real question, therefore, in the case, is, whether the claim set up by the charterers to put passengers on board, to occupy the cabin, was well founded. If it was, then the refusal of the owner to allow such claim was a breach of the charter, and the charterers had a right to put an end to the contract. If not, they were in fault, and the cargo is chargeable for freight and damages.

The charter, which is a very special and well-drawn instrument, clear and readily understood in every part of it, in terms reserves the cabin. It is insisted, however, that this is a mistake, and is inconsistent with other parts of the instrument, and that without the use of the cabin by the charterers, the voyage could not be performed, and that thus the reservation would defeat the contract. But, if there has been any mistake in the charter, or if its terms do not express the intent of the parties, there is another mode of settling the question than calling on the court, in this proceeding, to disregard its clear and undoubted meaning, and that is, to institute a proceeding to reform the contract. As to the objection that the clear words of the charter would necessarily defeat the whole object of it, and the purpose of the parties in entering into it, I am unable to see this consequence. I do not think the reservation necessarily excluded the master from the cabin, for, although he was to be appointed by the charterers, he was, in a qualified sense, the master of the owner. The owner had duties to perform in respect to the vessel, and some of them appropriately belonged to the master, and in them he, as master, was specially concerned. The possession of the vessel was not to be exclusively in the charterers, neither by the terms of the instrument, nor necessarily, regarding the nature and purpose of the voyage. This construction arises

out of the words used by the parties to the contract.

As respects the lien upon the cargo on board, the charter is express. If the breach of the contract had been on the part of the owner, there would, by the contract, have been a lien upon the vessel.

The decree below must be reversed, and a decree entered for the libellant, with a reference to the clerk to ascertain the freight and damage.