## Case No. 10,848.

### The PAULINE.

[1 Biss. 390.] [1]

District Court, D. Wisconsin. April, 1863.

EXECUTORY CONTRACT FOR TRANSPORTATION.

1. Executory contract for transportation, or for the service of a vessel is not a subject of admiralty cognizance.

[Cited in The William Fletcher, Case No. 17,-692.]

2. It is not a maritime contract nor is any lien created upon the vessel thereby.

[Cited in The William Fletcher, Case No. 17,-692; The James McMahon, Id. 7,197; The Monte A., 12 Fed. 332.]

3. On breach of such a contract the cause of action is purely of common law jurisdiction.

4. The court will dismiss a libel on exceptions.

[Cited in The William Fletcher, Case No. 17,-692; Scott v. The Ira Chaffee, 2 Fed. 406; The Monte A., 12 Fed. 332.]

In admiralty. Libel by Daniel Newhall for breach of verbal charter. The facts appear in the opinion.

W. H. Peckham, for libellant.

The cause of action is of admiralty jurisdiction, in personam and in rem.

(1) In Personam. The jurisdiction of the admiralty in personam in a case of contract depends solely on the question whether the contract be maritime or not, and is entirely independent of the existence or non-existence of a maritime privilege or lien. If such privilege or lien exist, the admiralty then has further jurisdiction in rem. "Admiralty," says Judge Story, "has a rightful jurisdiction over all maritime contracts in personam; but in cases of that sort, it cannot proceed

in rem unless there be a maritime lien, or a positive pledge as security." The Draco [Case No. 4,057]. "To determine jurisdiction in this country, the inquiry is whether it was a maritime contract and the service to be performed on tide waters; if so, the admiralty has jurisdiction." New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344. The subject matter of the contract or service gives jurisdiction. Waring v. Clark, 5 How. [46 U. S.] 441. If the subject matter of the contract relates to navigation of the seas, though it be made on land, the admiralty has jurisdiction. Zane v. The President [Case No. 18,201]. As to contracts the jurisdiction depends on the subject matter, whether maritime or not. De Lovio v. Boit [Id. 3,776]. "The admiralty jurisdiction in cases of contract depends primarily upon the nature of the contract, and is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to navigation and commerce." People's Ferry Co. of Boston v. Beers, 20 How. [61 U. S.] 401. In cases of charter-party and bill of lading, the charter-party is not a contract preliminary to a maritime contract, but it is the contract, and the bill of lading mere evidence of the shipping. Abb. Shipp. 277. See, also, The Tribune [Case No. 14,171]. A contract of charter-party or affreightment is a maritime contract of which admiralty has jurisdiction. Morewood v. Enequist, 23 How. [64 U. S.] 491; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 334. The respondents' advocate claims that there can be no personal liability where the ship itself is not liable, and quotes from the quotation of the United States supreme court, in The Freeman v. Buckingham, 18 How. [59 U. S.] 189. Now the doctrine of the quoted quotation in the case where it was used was true and is true, i. e., a case of marine

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

19FED.CAS.—1

tort committed by the master where the court hold the liability of the owners and the vessel to be co-extensive. And the supreme court, after making the quotation, call attention to the subject matter of which it was spoken, and then immediately show that it is not universally true. and proceed to illustrate by cases where the vessel would be liable, and not the owners, and vice versa. The falsity of the proposition as a general rule might also be illustrated by the familiar instance of the right of a master to proceed in personam while he cannot proceed in rem. Fland. Shipp. §§ 322, 324; The George [Case No. 5,329]; Willard v. Dorr [Id. 17,680]; Hammond v. Essex Fire & Marine Ins. Co. [Id. 6,001]. Also the right of material-men and furnishers of supplies in the home port to proceed in personam, but none to proceed in rem, unless by virtue of state laws, and not even in that way since the amendment to the 12th rule in admiralty. See McGuire v. Card, 21 How. [62 U. S.] 248; Ben. Adm. pp. 145, 153, § 269, and cases cited. "No doubt," says the United States supreme court, in the case of The General Smith, 4 Wheat. [17 U. S.] 438, "is entertained by this court that the admiralty rightfully possesses a general jurisdiction in cases of material-men; and if this had been a suit in personam there would not have been any hesitation in sustaining the jurisdiction of the district court." The jurisdiction in rem was sustained in that case by virtue of the state law. The same doctrine is held in the case of The Draco, before cited. The cases cited by respondent's advocate, in 18, 19, and 24 Howard. have no bearing on this point, for they were all mere discussions as to the existence of maritime liens; and in this point we are not discussing the question of liens.

(2) In Rem. This court has jurisdiction in this cause in rem—First, on the ground of a maritime lien; second, on the ground that the contract, being maritime, and the state law giving a lien the admiralty will enforce it. First, there is in this case a maritime lien. "In order to give jurisdiction to the admiralty in rem, where the contract is maritime in its subject and nature, it is not essential that the ship should have entered on the performance, and that the breach should have occurred in the course of the voyage. Hence, if she refuses to receive the cargo on board when it is at her side ready to be delivered, or the passenger with his baggage when he is ready to embark, the ship is bound and the party aggrieved may proceed in the admiralty in rem. The obligation results directly from the contract, and not from the performance which is simply in fulfillment and discharge of it." Fland. Shipp. p. 477, § 506. See Ben. Adm. 111, 112; New Jersey Steam Nav. Co. v. Merchants' Bank. 6 How. [47 U. S.] 392; Cutler v. Rae, 7 How. [48 U. S.] 732; The Volunteer [Case No. 16,991]; Hannah v. The Carrington [Id. 6,029]. This was directly held in the case

of The Pacific [Id. 10,643]. Substantially the same state of facts existed in the case of The Tribune [Id. 14,171]. There is a lien by virtue of the state law which the admiralty will enforce. We think we have clearly shown this to be a maritime contract. That being so, and the court having jurisdiction of the contract, it will enforce a state lien. The General Smith, 4 Wheat. [17 U. S.] 438; Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The Orleans v. Phœbus, 11 Pet. [36 U. S.] 175, 183; Roach v. Chapman, 22 How. [63 U. S.] 129. The Statutes of Wisconsin (Taylor's Ed.) p. 1745, provide: "Every boat or vessel employed in navigating the waters of this state shall be liable for all demands or damages accruing from the non-performance or mal-performance of any contract of affreightment, or any contract touching the transportation of persons or property, entered into by the master, owner, agent or consignee of the boat or vessel on which such contract is to be performed." This section was re-enacted literally in 1859. See Laws 1859, p. 152. The 12th rule in admiralty, as amended, changes the law in this respect so far as concerns suits by "material-men for supplies or repairs," but no further; and this case, not being one of supplies or repairs. is unaffected by the 12th rule.

(3) The respondents in personam and the vessel in rem are properly joined. Both are liable, and the general rule is that they may then be joined. Ben. Adm. 213, 214. So held in the case of The Zenobia [Case No. 18,208].

Wm. P. Lynde, for respondents. filed the following brief:

(1) In England the courts have decided that the court of admiralty has no jurisdiction over contracts of affreightment, whether by charter party, or bill of lading, but that they are solely within the jurisdiction of the courts of common law. 1 Conk. Adm. Prac. 123 et seq.

(2) The supreme court of the United States has decided that the court of admiralty in this country has jurisdiction over contracts of affreightment when the goods are received on board of the vessel or delivered to the master, and not otherwise; that "if the master or owner refuses to perform his contract. or for any other reason the ship does not receive cargo and depart on her voyage according to contract, the charter has no privilege or maritime lien on the ship for such breach of the contract by the owners, but must resort to his personal action for damages, as in other cases." Vandewater v. Mills, 19 How. [60 U. S.] 90; The Freeman v. Buckingham, 18 How. [59 U. S.] 188; Bulkley v. Naumkeag Steam Cotton Co., 24 How. [65 U. S.] 386.

(3) The owner of the vessel is never liable in a suit in admiralty on a contract of affreightment, where the vessel is not liable. In The Freeman v. Buckingham, 18 How.

[59 U. S.] 189, the court says, "And it has been laid down by the high court of admiralty in England (The Druid, 1 W. Rob. 399) 'that in all causes of action which may arise during the ownership of the persons whose ship is proceeded against, I apprehend that no suit could ever be maintained against a ship, where the owners were not themselves personally liable; or where their personal liability had not been given up, as in bottomry bonds, by taking a lien on the vessel. The liability of the ship, and the responsibility of the owners in such cases are convertible terms; the ship is not liable if the owners are not responsible; and, vice versa, no responsibility can attach on the owners if the ship is exempt and not liable to be proceeded against.' See, also, The Bold Buccleugh, 2 Eng. Law & Eq. 537." The libel cannot be sustained in rem and in personam. Dean v. Bates [Case No. 3,704]; The Orleans, 11 Pet. [36 U. S.] 175; Citizens Bank v. Nantucket Steamboat Co. [Case No. 2,730]; Bondies v. Sherwood, 22 How. [63 U. S.] 214; Ward v. Ogdensburgh [Case No. 17,158]. No jurisdiction. The vessel is not stated to be engaged in commerce between states. This is not a maritime contract for a court of admiralty. The contract was a verbal contract on land. It was a mere preliminary executory contract, not executed. Vandewater v. Mills, 19 How. [60 U. S.] 82–90; The Freeman, 18 How. [59 U. S.] 188; Bulkley v. Naumkeag Steam Cotton Co., 24 How. [65 U. S.] 392; The Zenobia [supra]. If the joining of defendants and vessel is not correct, the libellant will have to proceed in personam. Definition of a maritime contract. People's Ferry Co. of Boston v. Beers, 20 How. [61 U. S.] 400; Roach v. Chapman, 22 How. [63 U. S.] 129.

MILLER, District Judge. This libel is brought against the vessel, her master, and owners. The libel propounds, that the said owners of the schooner, by their agent chartered said schooner to libellant, verbally, for a voyage from the port of Milwaukee to the port of Buffalo, to be provided by, and to carry for, said libellant a cargo of eight thousand bushels of wheat, under deck, from Milwaukee to Buffalo, at the freight of eight and one half cents per bushel, to be paid on the discharge of said cargo at Buffalo; said voyage to be made and said wheat taken immediately on the return of the vessel to Milwaukee, she being at the time on her way from Buffalo to Milwaukee; that the vessel reached Milwaukee, and a better offer having been made for said vessel by other parties, the defendants chartered her to other persons, and refused to comply and fulfill the charter to libellant. The libellant sustained damage to the amount of four hundred dollars.

The defendants filed exceptions to the libel, as follows: (1) That the libel does not allege sufficient to give jurisdiction to the court, over the contract or over the vessel. (2) That the cause of action, as laid in the libel, is purely of common law jurisdiction, and not of admiralty. (3) That a proceeding in rem and in personam is improperly joined.

There is no objection to the contract, as being by parol. It is sufficient for the coasting trade, although a loose way of doing business. Conk. Adm. 131, and cases cited. In England, the admiralty has not allowed jurisdiction of contracts of affreightment. The common law courts claimed the jurisdiction. In this country, the constitution of the United States and the acts of congress are construed as conferring upon the district courts admiralty jurisdiction of contracts of affreightment.[2] A maritime contract depends on its subject matter, and the courts have jurisdiction of contracts, which relate to the service or employment of a vessel. And contracts of affreightment entered into by the master or agent of the vessel in good faith, and within the scope of his apparent authority, bind the vessel to the merchandise. Under the maritime law of the United States, the vessel is bound to the cargo, and the cargo to the vessel, for the performance of a contract of affreightment; but the law creates no lien on a vessel as a security for the performance of a contract to transport a cargo, until the cargo is shipped under it. The Freeman v. Buckingham, 18 How. [59 U. S.] 182, 188. In Vandewater v. Mills, 19 How. [60 U. S.] 82, the court lay down and establish the following rules in admiralty, to wit: "Maritime liens are stricti juris, and will not be extended by construction, analogy, or inference. Contracts for the future employment of a vessel do not, by the maritime law, hypothecate the vessel. The obligation between the ship and cargo is mutual and reciprocal, and does not take place till the cargo is delivered on board." The opinion of the court expressly repudiates the doctrine, that mere agreements for the service or employment of a vessel may be enforced against the vessel by admiralty proceedings in rem. The same principle is reiterated in Bulkley v. Naumkeag Steam Cotton Co., 24 How. [65 U. S.] 386. The master had receipted for the cotton to be carried on his vessel, and placed it on a steam lighter, of which he had control, to be transferred from the warehouse to his vessel, and it was lost by fire. The court held that a delivery of the cotton to the lighterman was a delivery to the master, and bound the vessel, the voyage being considered to have commenced. On page 392, the court remarks: "It is insisted that the vessel is exempt from responsibility, upon the ground that the one hundred bales were never laden on board of her, and we are referred to several cases in this court, and in England, in support of the position. The

_____
[2] [See The A. M. Bliss, Case No. 274.]

Freeman, 18 How. [59 U. S.] 189; Vanderwater v. Mills, 19 How. [60 U. S.] 90; Grant v. Norway, 2 Eng. Law & Eq. 337; Hubbersty v. Ward, 18 Eng. Law & Eq. 551; Coleman v. Riches, 29 Eng. Law & Eq. 323. But it will be seen, on reference to these cases, the doctrine was applied or asserted upon a state of facts wholly different from those in the present case. In the cases where the point was ruled, the goods were not only not laden on board the vessel, but they never had been delivered to the master. There was no contract of affreightment binding between the parties, as there had been no fulfillment on the part of the shipper, namely, the delivery of the cargo. It was conceded no suit could have been maintained upon the original contract, either against the owner or the vessel." In the case of The R. C. Winslow [Case No. 11,736] decided in this court, the master had contracted to receive on board his vessel for transportation a quantity of wheat from a warehouse, where wheat is weighed in one hundred bushel drafts, tallied by the first mate, and discharged through an iron pipe, extending from the warehouse to the vessel; the second mate being on deck to watch the flow of wheat from the pipe into the hold of the vessel, to shift the pipe, to control the discharge of wheat into the pipe, and to trim the vessel; and through the negligence of this mate seven drafts of the wheat were lost in the river by the parting of the pipe. It was held that the wheat was delivered to the vessel when it passed from the warehouse into the pipe, and that the vessel was liable for the wheat lost. I remarked, "This case is different from a contract merely executory, where there has been no delivery of the goods to the master, nor change of possession, nor effort to deliver. When there is no delivery of the goods, the contract of the master for their transportation creates no lien." In Hannah v. The Carrington [Id. 6,020], the ship was withdrawn from the trade, and refused further to comply with a contract of affreightment, and the vessel was not liable. The cases here referred to are wanting in the essential particular of delivery to the vessel.

In the great case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] on page 392, it is remarked by the court: "Some question was made on the argument founded on the circumstance, that this was a suit in personam. The answer is, if the cause is a maritime cause subject to admiralty cognizance, jurisdiction is complete over the person as well as over the ship; it must, in its nature, be complete, for it cannot be confined to one of the remedies on the contract when the contract itself is within its cognizance." In Morewood v. Enequist. 23 How. [64 U. S.] 491, the admiralty jurisdiction of the courts of the United States extends to contracts of charter party, &c., affreightment; and are cognizable in courts of admiralty by process either in rem or in personam. But no responsibility can attach to the owners if the ship is exempt and not liable to be proceeded against. Freeman v. Buckingham, 18 How. [59 U. S.] 182–189.

It is not necessary to pursue this inquiry any further, notwithstanding the voluminous and ingenious argument of libellant's advocate. The agreement propounded in the libel is cognizable in the common law courts, and is not the subject of admiralty cognizance. It was a mere executory contract for the service of the vessel; or rather an agreement preliminary to a maritime contract. Such contracts must be equally binding on both parties. And it could not be pretended that this court in admiralty would have jurisdiction of a libel against Newhall, at the suit of these owners, if he had been the delinquent party.

The state law authorizing proceedings against boats and vessels does not create such a lien as is cognizable in the admiralty, and consequently there is not to be a proceeding in personam. By rule 12, proceedings in personam, but not in rem, shall apply to cases of domestic ships for supplies, repairs, or other necessaries. This case does not come within the rule.

In the case of Vandewater v. Mills, 19 How. [60 U. S.] 82, the court dismissed the libel on exceptions. Following that precedent, this libel, for the reasons here given, will be dismissed on the exceptions herein filed.

NOTE. Nor is a contract to furnish materials for the construction of a vessel even on the shores of tide waters, within the admiralty jurisdiction. Young v. The Orpheus [Case No. 18,169]. See The Dick Keyes [Id. 3,898], where it is held that a contract for the use of a barge at a stipulated rate is cognizable in admiralty. Admiralty has no jurisdiction over a preliminary agreement. Andrews v. Essex Fire & Marine Ins. Co. [Id. 374].