## Case No. 10,519.

### ONE HUNDRED AND EIGHTEEN STICKS OF TIMBER.

[10 Ben. 86.] 1

District Court, E. D. New York. Aug., 1878.

CHARTER — FREIGHT AND DEMURRAGE — LIEN — CHANGE OF ACTION IN REM TO ACTION IN PERSONAM.

1. The master of a vessel filed a libel against the cargo, to recover freight and demurrage claimed under a charter and bill of lading. The consignee of the cargo, who had sold the cargo and had no interest in it, intervened and gave bonds for the cargo when it was seized under the process. The cargo had been delivered to the purchaser without notice of any claim of lien for freight and after the consignee had signed an agreement agreeing to pay $150 demurrage, and the consignee in his answer admitted that he was liable for the amount of freight due, but disputed the amount claimed by the vessel. The charter provided that freight was to be paid on the cargo, which consisted of lumber and timber, at so much "per M. inch board measure:" *Held*, that the lien of the vessel on the cargo had been lost.

2. As the consignee, who was the only party respondent before the court, was the party really liable to pay what was due, the court would turn the proceeding into an action in personam, and give a decree against him for the amount of the freight due, according to the charter, and the $150 demurrage, which he had agreed to pay, but without interest or costs.

[Distinguished in The Monte A., 12 Fed. 333.]

3. The meaning of the charter was, that all the timber carried was to pay freight, except only the butts of sticks where the ends were not square.

A cargo of lumber and timber was brought from Port Royal, S. C., to New York, under a charter party, and a bill of lading which specified 118 sticks of timber, amounting to 171,206 feet, besides plank and resawed lumber, at $7.50 per M. freight for the timber and $7.00 per M. freight for the plank and lumber. On arrival the master informed the consignee that there was a claim of $150 for demurrage at Port Royal, and requested an advance on the freight. The consignee advanced $500, and also signed the following agreement:

"New York, Oct. 9, 1876. I hereby agree to become responsible to the captain and owners of Schr. A. G. Ireland, to the amount of $150, and to retain all the balance in my hands rec'd from sale of said schr's cargo after freight, com's., &c., are paid, subject to an attachment for demurrage."

And a further advance of $150 was also made, and the cargo was discharged. The inspector who measured the 118 sticks of timber reported 160,212 feet measurement; and the consignee offered to pay freight at the rate of $7.50 for that amount, and for the rest of the cargo at the rate and measure in the bill of lading, less the $650 advanced, but refused to pay demurrage. The

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

cargo has been sold by the consignee and was taken away by the buyer as fast as discharged. The master libelled the cargo on the charter party for his freight and demurrage, and the consignee appeared as claimant of the cargo, and gave a stipulation for its value.

D. & T. McMahon, for libellant.
John E. Risley, for claimant.

BENEDICT, District Judge. This action is brought to enforce a lien against a cargo of timber, for freight and demurrage, due upon a charter party. The existence of the lien is denied by the claimants. The evidence shows that after the cargo arrived at the port of delivery, it was sold by the person to whom it had been consigned and who is the claimant in this action. After this sale had been effected, the timber was discharged from the vessel, and as fast as landed it was taken by the buyer and removed to his premises, where, in point of fact, a part of it had already been sawed when the libel herein was filed.

It further appears that the master and a part owner of the vessel were informed before the cargo was landed of the consignee's intention to sell the timber, and promised not to give the buyer notice of any claim upon it, lest thereby the sale should be broken up.

It still further appears that an agreement was come to between the master and owner of the vessel and the consignee of the cargo as to the amount of the demurrage due, in which agreement not only was there no mention of an intention to claim a lien upon the cargo, but a sale of the cargo and a receipt of the proceeds by the consignee was plainly contemplated.

These significant facts are inconsistent with the idea that it was intended to look to the cargo after its landing for either freight or demurrage. The only evidence pointing to an opposite conclusion is that respecting the remark made at the close of the interview at which the agreement as to the demurrage was made. This conversation is denied by the consignee, but if it occurred as claimed by the libellant, it is not inconsistent with the fact, clearly proved, that the intention of the master and owner was to permit the consignee to sell the cargo and receive the proceeds and to withhold from the buyer the fact that the freight and demurrage had not been paid. A delivery of cargo by the vessel to a third party who has purchased the same and agreed to pay the consignee therefor, with the knowledge of the shipmaster, who has intentionally withheld from the buyer information of any intention to hold the cargo for the freight, in case the freight should not be paid by the consignee, amounts to a waiver of the lien for freight.

I am therefore of the opinion that the libellant has now no lien for freight upon

the cargo proceeded against. But in this case, it appears from the record, that the party before the court, as claimant of the cargo, is not the person who purchased the timber, and to whom it was delivered from the vessel, but the consignee—who, as now appears, had no interest in the cargo at the time it was seized, but who has here intervened without objection taken by the libellants, and has filed his own stipulation for value—so that any decree rendered in this cause must, of necessity, be made against the consignee. The party thus before the court was knowing to all the facts attending the carriage and delivery of the cargo, and in his answer admits himself to be liable for the freight due upon the charter party. The question, then, is presented whether it is not permissible in a court of admiralty to treat this action as an action in personam against the person whose stipulation is in court, and give a decree accordingly. There is no possibility of any injustice being done by such a course.

The issue raised by the pleadings presented every question that can be raised in respect to the liability of the claimant, and one additional question, viz.: that of a lien. The fact that the claimant was the consignee of the cargo, who received and sold the same, and now has of the proceeds an amount equal to the freight and demurrage, appears by the testimony of the consignee himself; and in addition to the admission of liability in the answer, the evidence tendered in support of the libel proves every fact upon which the liability of the claimant depends, nor is there any pretence that any other or different state of facts can be shown.

Inasmuch, therefore, as the pleadings involve the question of the claimant's liability and as a decree in favor of the libellant in this action will be, in substance, a decree against the claimant, for a liability admitted by his answer, it would seem to be not only just, but in harmony with the principles upon which proceedings in admiralty are conducted, to disregard the form of the proceeding, and instead of remitting these parties to an action in personam, where precisely the same facts would appear, to determine in this action the question which the pleadings present, viz.: the amount of freight due the libellant, and give a decree for that amount, against the consignee, who has volunteered to intervene in this action, and has obtained the release of the cargo by giving his own stipulation for its value. It is not supposed that such a course could be pursued if the owner of the timber was before the court as claimant. Nor could it be adopted as against this claimant if the result would necessarily be to charge him with the costs, for it would be unjust to saddle the costs of the action upon the party who succeeds upon a question decisive of the right of the libellant to institute the action in the form adopted. But in admiral-

ty, costs are in the discretion of the court, and, as a matter of course, no costs will be given to the libellant. I should even give costs to the claimant, were it not for the fact that his appearance as claimant, contesting the libellant's demand, was wholly gratuitous, as at the time of filing the libel he had no interest whatever in the property proceeded against.

I am not aware of any adjudged case in which a course similar to the one above indicated has been pursued; but cases will, I think, be found tending to support such action on the part of the court. See Sheppard v. Taylor, 5 Pet. [30 U. S.] 701, for a case where an action in personam was turned into an action in rem.

I proceed, therefore, to determine the amount of freight owing by the claimant to the libellant, upon the facts proved. It may be first observed that the position of the claimant is not that of one who has advanced money upon a clean bill of lading, for, as clearly appears, when the claimant made his advance he knew that the cargo was being transported under a charter party and had made himself acquainted with the terms of that instrument. No doubt can therefore be entertained as to his liability to pay the freight due, according to the charter party. Indeed, he admits his liability in the answer he has filed.

But a single question has been raised as to the amount of freight due. The consignee disputes the method by which the timber was measured by the libellant, for the purpose of calculating the freight.

The provision of the charter is that the freight shall be $7 and $7.50 "per M., inch board measure." The consignee has contended that the meaning of this provision is that the freight is to be calculated upon a sale-inspection measurement, in which all broken, unsound and unmarketable parts are excluded from the measurement. To this view I cannot accede. The meaning of the charter is that all the timber carried is to pay freight, excepting only the butts of sticks whose ends are not square. So the timber was measured by the witness Armstrong, as I understand his testimony, and a decree will therefore be entered for freight, calculating it at the rates named in the charter party, upon the quantity given by the witness referred to, unless the claimant desires to institute a more particular inquiry as to the quantity when measured in the manner indicated. There is a possibility that the witness may have been misunderstood, and permission is therefore given to the claimant to institute such inquiry if he so desires.

Thus far I have confined my attention to the question of freight alone. The libel also claims demurrage at the rate named in the charter party for detention of the vessel while loading.

Upon this question the claimant has set

up in his answer and proved an agreement on his part to be personally responsible for demurrage to the amount of $150. I entertain no doubt of the personal liability of the consignee for this amount upon the agreement which he entered into, and having himself set up and proved the agreement, no injustice will be done by rendering a decree against him in this action for that amount of demurrage as well as the freight, less the payments made on account. I allow no interest and, for the reasons above stated, no costs to either party.

Let a decree be entered in accordance with this opinion.