# The Monte A.

*(District Court, S. D. New York.   June 6, 1882.)*

1. ADMIRALTY JURISDICTION—MARITIME CONTRACTS—AFFREIGHTMENT.

   Charter-parties and contracts of affreightment are maritime contracts, and, by their subject-matter, within the admiralty jurisdiction.

2. SAME—BREACH OF—ACTIONS ON.

   For the breach of such contracts, if wholly executory, and no part of the performance of the contract has been entered upon, no maritime lien exists upon the vessel, and an action *in rem* will not lie, but only an action *in personam*, against the master or owners.

3. ACTIONS—JOINDER OF—RULE 46—PRACTICE.

   Under rule 46 of the supreme court rules in admiralty an action *in rem* may be joined with an action *in personam* against the master or owners for breaches of contracts of affreightment or charter-parties.   The same is true in other cases not expressly provided for under the supreme court rules in accordance with the prior and subsequent practice of the district courts.

4. PRACTICE—AMENDMENT OF LIBEL.

   In cases where such actions may be conjoined in the same libel, if the action be improperly brought *in rem*, *held*, that the court has jurisdiction of the subject-matter of the controversy and of the proceeding, and that it is competent for the court to permit an amendment of the libel praying process and judgment *in personam* against the owner after he has appeared and contested the suit *in rem* upon the merits, there being no change in the subject-matter of the controversy; and the court should permit such an amendment, if desired, where much testimony has been taken upon the merits in the proceeding *in rem*, when the latter will not lie for want of a lien.

5. SAME—JUDGMENTS—IN PERSONAM.

   A judgment *in personam* cannot ordinarily be entered in a suit *in rem* except upon amendment and the issue of new process *in personam*, or the general appearance of the owner *in personam*.

6 SAME—AMENDMENTS.

   A general appearance in an action *in rem* is limited by the nature of the action and the property seized.

7. CHARTER-PARTY—ACTION—PRACTICE—COSTS.

   Where the Monte A. had been chartered to the libellant to proceed to Baltimore to take a cargo, but subsequently refused to go there, and the libellant thereupon sued *in rem* for damages, and the libel showed such refusal on its face, and the owner appeared and answered upon the merits, denying the alleged charter-party, but not objecting to the form of the action, and testimony was taken upon the merits, and after two years, upon the calling of the case on the calendar for hearing, the objection to the form of the action was first taken, the vessel having been bonded at the commencement of the action, *held*, that the objection that there was no lien on the vessel, and that the action *in rem* would not lie, was not waived; that no decree *in rem* could be pronounced, and that the sureties on the bond must be held discharged.   *Held, also*, that the libellant should have leave to amend the libel by inserting a prayer for further process and judgment *in personam*, and thereupon the cause might be further heard on the proofs already taken, and such additional proofs as might be desired;   costs not allowed, the objection being unreasonably delayed.

The libel in this case was filed against the Monte A. *in rem* to recover damages for the breach of an alleged contract of charter-party, whereby the owners agreed with the libellant that the Monte A., then on her way to Europe, should, upon her return, proceed to Baltimore to carry a cargo of grain for the libellant. Upon her return the vessel did not proceed to Baltimore, her owners denying that any valid contract with the charterer had been executed. The vessel was arrested at the commencement of this action, and was released upon the usual bond, with sureties, under the act of March 3, 1847. The libel averred, in general terms, the jurisdiction of this court. The answer contained no specific denial of jurisdiction, but denied the making of the charter-party and any damages resulting from its alleged breach. Considerable testimony was taken by deposition, and after the cause had been pending for about two years, when called for trial the claimants for the first time objected to the jurisdiction of the court on the ground that it appeared on the face of the libel that the contract of charter-party was wholly executory, and that no lien upon the vessel, therefore, existed for any breach of the contract, even if made as alleged. On the part of the libellant it was claimed that a lien existed though the contract was wholly executory, but if not, that the objection was waived by not being pleaded, and by the litigation upon the merits of the cause without objection. The residue of the evidence was taken, reserving the question of jurisdiction.

*Salomon & Dulon,* for libellant.

*Lorenzo Ullo,* for claimant.

Brown, D. J. The action in this case is brought for the breach of a contract of charter-party wholly executory. The vessel never entered upon the performance of the contract or of any part of it. In such cases it has been repeatedly declared by the supreme court that no lien exists upon the vessel. *The Freeman,* 18 How. 182; *The Yankee Blade,* 19 How. 82; *The Keokuk,* 9 Wall, 517, 519. The point has been directly adjudicated in several cases in this court and in other courts, and libels *in rem* dismissed upon that ground. *The General Sheridan,* 2 Ben. 294; *The William Fletcher,* 8 Ben. 537; *The Pauline,* 1 Biss. 390; *The Hermitage,* 4 Blatchf. 474.

In the recent case of *The Ira Chaffee,* 2 FED. REP. 401, the learned judge of the district court of the eastern district of Michigan has carefully reviewed the authorities, arriving at the same conclusion, and pointing out its conformity to the general maritime law. The considerations in favor of such a lien, expressed in the cases of

*The Flash*, Abb. Adm. 67, and *The Pacific*, 1 Blatchf. 569, must be deemed overruled by these subsequent decisions.

There being, therefore, no lien upon the vessel, there is no foundation for a decree *in rem* against her. Delay in presenting the objection cannot, therefore, affect the question; for the want of any lien appears upon the face of the pleadings, since the libel asserts that the vessel never entered upon the performance of any part of the charter-party. The proofs confirm it, and the answer itself expressly admits it; claiming, however, a dismissal of the libel on the ground that the alleged charter-party was wholly unauthorized and void ; and the record itself, therefore, would show any decree *in rem* against the vessel to be erroneous. As the vessel cannot be held, the sureties in the bond executed for her release, which stands merely as a substitute for the vessel, are also necessarily discharged. *The Fidelity*, 16 Blatchf. 569, 576.

As the owner of the vessel, however, is a non-resident, who appeared generally in the action and contested his liability upon the merits, without taking any exception to the form of remedy, as he might and should have done at the commencement of the action, (*The Warren*, 2 Ben. 498; *The Bilboa*, Lush. 149; *The Sultan*, 1 Swab. 509; Id. 496, 428; *The Great Eastern*, L. R. 1 Ad. & E. 384; *The Sylph*, L. R. 2 Ad. & E. 24;) and as the situation as respects him, after the release of the vessel on bond, is claimed to be essentially the same as if the action had been commenced *in personam*, it is urged that if he is found clearly liable for the damages alleged in the libel, a personal judgment against him ought to be rendered.

The ordinary practice in admiralty does does not permit a personal judgment to be entered upon a mere libel *in rem*. In the case of *118 Sticks of Timber*, 10 Ben. 86, a personal judgment against the claimant was rendered under circumstances altogether exceptional. The libel was filed against the timber, a part of the cargo, to recover freight and demurrage under an agreement with the consignee. The timber libelled had been delivered to the consignee and sold to a third person with the assent of the libellants, so that his lien was lost. A libel was afterwards filed against it *in rem*. The consignee, who had no longer any interest in the timber, voluntarily appeared as claimant, gave a stipulation for its release, and, by his answer, admitted his liability for the freight and demurrage claimed, except as to the mode of computing the amount of freight under the contract set forth in the libel. A personal decree was allowed by *Benedict, J.*, for the damage admitted, and for the freight as adjudged by him, without interest or costs.

The question has usually arisen where the property libelled and sold is found insufficient to satisfy the decree *in rem*, and application has been made for a personal judgment for the deficiency against the claimant, who had contested the suit and was himself liable for the demand. In the case of *The Triune*, 3 Hagg. 117, such relief was allowed. A contrary rule was, however, soon afterwards established in the English practice by two adjudications of Dr. Lushington; first, in the case of *The Hope*, 1 W. Rob. 155, and afterwards in the case of *The Volant*, Id. 383. In the case of *The Hope* he says:

"Looking to the general principles upon which the proceedings in this court are conducted, it is, I apprehend, wholly incompetent for the court to engraft a personal claim against the master as part owner of this vessel upon the proceedings which have already taken place in this cause. It may be true, as stated, that the proceeds of the Hope will prove inadequate to answer the full amount of the damage which the owners of the Nelson have sustained. If so, it is undoubtedly a hardship upon these owners; but this circumstance will not entitle me to exercise a jurisdiction in their behalf which, according to my own impression, I clearly do not possess. I am not aware of any case in which this court, in a proceeding of this kind, has ever engrafted upon it a further proceeding against the owners, upon the ground that the proceeds of the vessel proceeded against have been insufficient to answer the full amount of the damage pronounced for."

Two years afterwards, in the case of *The Volant, supra,* the subject was reconsidered by the same eminent authority, and the same conclusion reached; overruling the case of *The Triune* in that particular, (3 Hagg. 117.)

In denying the application for a personal decree for the deficiency he says:

"Where there is an appearance to the action, and bail given, as to the bail the decree cannot be extended beyond what they, who are strangers to the cause, have voluntarily made themselves responsible for; but in a case where the owner has appeared the question is to what extent he has appeared to the process against the ship. It is material to see how that process is worded: 'It decrees the ship to be seized, and it cites all persons having, or pretending to have, any right, title, or interest therein to appear in this court, on certain days and hours, there to answer in a cause civil and maritime.' The owners are only called in respect to any right, title, and interest, in order that they may appear and intervene for their interest in the vessel, and not further. Now, if it were possible, on such warrant, to demand bail beyond the value of the ship, or if the process against the owners went to make them responsible beyond the value of the ship, there could be no reason why bail should not be commensurate with the damage, where the amount is not restricted by statute; but if bail could not be demanded beyond the value of the ship, I do not see how the owners, in that proceeding, can be made further responsible. The

warrant of arrest is confined to the ship; it goes no further. It appears to me, therefore, that there is no personal liability beyond the value of the ship; for this obvious reason, that the original process would not justify any such proceeding. The appearance given by the individual himself would not justify such proceeding; he has appeared only to protect his interest in the ship."

Such is now the established practice in the English admiralty, (see *The Wild Ranger*, 1 Br. & L. 84; Will. & B. Adm. Pr. 67; Boyd, Adm. (1868) p. 33; Coutte, Adm. Pr. 8;) and the same view is expressed in the revised edition of Conkling, Adm. Pr. vol. 2, p. 265.

In the present case the claimant, the owner of the vessel, resides in Italy, and has never been personally within the jurisdiction of the court. His appearance in this case was an appearance *in invitum*, upon an arrest of his vessel, which I am obliged to hold was unauthorized. It would be unjust, as it seems to me, to hold that a foreign owner shall not appear in court to reclaim his property as against an unauthorized seizure without necessarily subjecting himself to liability to a personal judgment, against which he has never been cited to defend; and yet that must be the necessary result if it be admissible to turn a suit *in rem* into a suit *in personam* by amendment, without any further service of process and without the claimant's consent. In actions at common law, and in actions in admiralty *in personam* a general appearance, though it cannot cure any essential defect of jurisdiction of the subject-matter, (*Cutler* v. *Rae*, 7 How. 729, 731; *The Louisa*, 1 Brow. & L. 59; *The Elenore*, Id. 185; *The Ida*, Lush. 6,) cures any irregularities in the service of process, or even the want of any service. *Atkins* v. *Disintegrating Co.* 18 Wall. 272; *Wheelock* v. *Lee*, 74 N. Y. 495, 498; *The Roslyn*, 9 Ben. 119, 129; *Pixley* v. *Winchell*, 7 Cow. 366.

In these cases, the action being general against the person, a general appearance is co-extensive with the nature of the action. But even in such actions, where the defendant's person or property has been arrested or attached irregularly, the defendant may appear specially to vacate the proceedings, and the court will not acquire thereby any jurisdiction to proceed to a personal judgment. *Sanford* v. *Chase*, 3 Cow. 381; *Seaver* v. *Robinson*, 3 Duer, 622; *Brett* v. *Brown*, 13 Abb. (N. S.) 295; *Manice* v. *Gould*, 1 Abb. (N. S.) 255. But an action purely *in rem* is itself limited to a proceeding against the *res*, and a *general* appearance in such an action should, it seems to me, be deemed no more general than the limited nature and scope of the action itself, and of no greater effect than a *special* appearance to vacate an unauthorized arrest or attachment upon a general suit *in personam*.

No judgment *in personam* can, therefore, be allowed in this case, except through some amendment of the proceedings which it is competent for the court to grant, and upon due notice or citation which shall preserve the essential rights of the parties.

· I have no doubt that an action *in personam* would lie in admiralty upon the facts in this case. The charter-party or contract of affreightment was a contract for a maritime service. The libellant's cause of action for the breach of it was, therefore, by its subject-matter, within the jurisdiction of the admiralty, although, for want of any lien upon the vessel, his remedy was *in personam* against the owners and not *in rem*. *Morewood* v. *Enequist*, 23 How. 491, 493; *Oakes* v. *Richardson*, 2 Low. 173; *Maury* v. *Culliford*, 10 FED. REP. 388.

The libel *in rem* is dismissed as against the vessel, not strictly speaking for any want of jurisdiction in the court, but for a mistake in the form of remedy demanded. The subject-matter of the controversy, the parties, and the property are all within the jurisdiction of the court; and this court is not only competent, but it is the appropriate court, to pass upon the questions involved; and the libel as respects the vessel is dismissed because the court adjudges that no lien upon the vessel existed.

In a common-law action of libel, if the defamatory words set forth in the declaration were held not to constitute in law a libel, and the complaint were thereupon dismissed, it would not be said that the court had not jurisdiction of the action; and so. if it should appear that the libellous words were only spoken by the defendant, and not written or published. If, pending proceedings upon a libel *in rem*, the property seized were sold as perishable, though the libel might be afterwards dismissed on the ground that no lien existed, as in this case, it could not be held, I think, that the proceeding was beyond the jurisdiction of the court, so as to impair the purchaser's title. *Elliott* v. *Peirsol*, 1 Pet. 328, 340; *Lavin* v. *Emigrant Bank*, 1 FED. REP. 657, 666; and, if within the jurisdiction of the court, then it is competent to amend the proceeding.

The libel in this case, for a breach of contract of affreightment, might have been framed both against the owner *in personam* and against the vessel *in rem*. It was the practice in this court, long before the adoption of the supreme court rules in admiralty, to conjoin these remedies in cases of charter-party and affreightment. Those rules, while providing for the joinder of remedies in regard to various other subjects, do not provide for this; and under rule 46 it is, therefore, left subject to the regulation of the several district and

circuit courts; and the former practice of joining these remedies in this class of cases exists in this district, as well as in other districts, the same as before. *The Zenobia,* 1 Abb. Adm. 48; *The Shand,* 10 Ben. 294; *The Keokuk,* 9 Wall. 517; *The Clatsop Chief,* 8 FED. REP. 164.

The pleadings in this case contain all the requisite allegations for the full hearing and determination upon the merits of the owner's liability as in a suit *in personam.* The only thing wanting is a prayer in the libel for a monition and personal judgment against him. An amendment to this effect is no change in the substantial cause of action, but only in the relief demanded. As both modes of relief might have been sought in the same libel, it seems to me that it is clearly within the power of the court to permit an amendment by adding such a prayer for relief *in personam,* and for a monition against the owner.

In the case of *The Zenobia,* above cited, *Betts,* J., says:

"The party directly liable upon the claim chargeable upon the vessel may in this court be joined with the ship in one suit, and a decree may be prayed and taken against him *in uno flatu* with that against the vessel. Or, for want of a prayer to that effect at the initiation of the suit, the libel may be amended by inserting it, even after decree *in rem* rendered, if that decree proves fruitless to the libellant, and if the party sought to be personally charged has appeared and contested the suit. The expense and delay of two or three actions, requiring to be disposed of upon identically the same pleadings and proofs, are thus saved the creditors, and the association of remedies promotes the simplicity and celerity so much sought for and favored in admiralty procedure."

In his work on practice, also, (Betts, Adm. Pr. 99,) he says:

"The practice of this court is not to render a decree *in personam* on a libel *in rem,* but if the case proved shows a clear right to a recovery against the person, whether the action *in rem* is sustainable or not, the libellant will be permitted after decree to introduce the proper allegations *in personam,* and proceed thereon. Care will, however, be taken that no surprise or advantage is allowed against the defendant, by means of such change of the direction of the action. Full notice must be given him of the change of proceedings, and although his appearance in the action *in rem* places him so within the jurisdiction of the court as to authorize it to mould the action conformably to the justice of the case, his stipulators will not be bound for any act or proceedings out of the suit *in rem.* So, also, if the defendant does not appear to answer or contest the action in its direction *in personam,* like proceedings must be taken to bring home notice to him, as on an original institution of a suit. After such steps have been taken the court will hear and adjudicate the matter upon the proofs already before it, or upon the hearing of such further evidence as either party may be allowed, on motion or petition, to introduce."

v.12,no.3—22

And this practice seems to be approved by *Curtis*, J., in the case of *The Enterprise*, 2 Curt. 317, 319.

Such an amendment could not, however, be allowed in cases where, under the admiralty rules, both remedies could not be conjoined in the same libel, (*The Zodiac*, 5 FED. REP. 220, 223;) nor where the subject-matter of the original libel is wholly beyond the jurisdiction of the admiralty. *The S. C. Ives*, Newb. 205, 214; *Ward* v. *Thompson*, Id. 95; 22 How. 330.

The practice above indicated by Judge Betts is not inharmonious with the decisions in the cases of *The Hope* and *The Volant*, above cited. It does not permit judgment *in personam* upon a mere citation *in rem*, but it permits an amendment to the libel by adding a prayer for judgment against a contesting owner, and it preserves the proofs already taken for subsequent use in the cause. This may often be a consideration of great importance to the parties, and should lead the court to preserve this practice in cases where circumstances make it desirable.

This libel should, therefore, be dismissed as against the vessel, but without costs, as the objection to the want of any lien should have been taken at the outset of the action, (Wms. & Br. Adm. Pr. 67,) and the sureties upon the bond given upon her release should be discharged; but without prejudice to any application by the libellant, within 10 days, to amend the libel by praying judgment against the owner, who has heretofore appeared and answered herein, and for the usual citation against him; and after due service thereof, or his voluntary appearance, the cause to be heard upon the proofs already taken, and such additional proofs as either party may desire to add.

See *The Alida, post*, 343.