## THE SOMERS N. SMITH.

### (District Court S. D. New York. December 11, 1907.)

TOWAGE—BREACH OF TOWAGE CONTRACT—EXECUTORY CONTRACT.

Libelant engaged respondent tug to tow three barges, which were then anchored together, to a port. The tug proceeded to the place where the barges were, reaching there in the morning and, although they were ready to be towed, she went into a harbor and remained until the next day. In the meantime one of the barges slipped her chain and drifted on shore and was injured. On the next day the tug took the remaining two barges and towed them to the port agreed upon. Held that, when the tug went to the place where the barges were for no other purpose than to take them in tow, she entered upon performance of the contract, and having subsequently performed it in part it was not executory, and that a suit in rem could be maintained against her to recover damages for its breach in negligently failing to take the barges in tow when she should have done so.

In Admiralty.

James J. Macklin and La Roy S. Gove, for libellant.
Robinson, Biddle & Benedict, for claimant.

ADAMS, District Judge. This action was brought by The P. Dougherty Company, against the tug Somers N. Smith to recover the alleged loss, said to have been $7,500, which arose from the failure of the Smith to carry out the contract of towage described in a libel of which the following is the material part:

"Second: That during the times hereinafter mentioned the libellant was and is now a corporation duly organized and existing under the laws of the State of Maryland, and at the time of the happening of the occurrences hereinafter set forth was the owner of the Barge Dendron.

Third: On information and belief libellant alleges that on or about the 23d day of March, 1906, the Steamtug Margaret owned by the libellant herein left the harbor of New York at about 12.15 P. M. having in tow the said barge Dendron which was loaded with cargo, and the barges Norfolk and Annie E. Embrey, which latter barges were light, the said tug and tow being bound for Norfolk, Virginia, the said barge Dendron was next to the said Steamtug on

a hawser astern, the Norfolk following and the Annie E. Embrey being the hind barge. That on said trip aforesaid and on the day following at about 7.45 P. M. the said tug and tow, during the prevalence of a north east strong gale and heavy snow storm, endeavored to get into Tom's Cove, Virginia, and while said tug was attempting to make said cove, the captain of the said tug stopped the engines thereof and blew whistles for the barges to anchor, which they did, but that the hawser run from said steamtug to the barge Dendron fouled the said tug's propeller wheel, which made the said tug helpless, causing her to drift on to the beach, the said barges remaining at anchor and afloat.

That on the 25th day of March, the wind having moderated, the libellant made a contract with the representatives of the Steamtug Somers N. Smith in consideration of the payment of five hundred dollars to tow the said three barges from where they were at anchor to Norfolk, and to receive the sum of seven hundred dollars if said tug Smith succeeded in safely rescuing the said steamtug Margaret with said barges the said tug Smith to be dispatched immediately to the scene where said barges were afloat and the said steamtug Margaret on the beach, and to take said barges in tow, and if practicable to rescue the said steamtug Margaret.

That said Steamtug Smith arrived in the vicinity of said barges on the morning of March 26th, the day being clear on the morning she arrived, sea calm and said barges still afloat, and having manœuvred about without communicating with those in charge of said barges, at about noon, proceeded into Assateague harbor and remained therein without making any effort to take any of said barges in tow, which she could easily have done. That those in charge of said barges did not know the mission of the said Steamtug Smith on said day; that said barges remained afloat until 8 o'clock P. M. of the said 26th day of March, when the chain on said Barge Dendron was slipped, and she also brought up on the beach. That on the next day, to-wit, the 27th day of March, the said tug Smith came out of Assateague harbor and then took the two remaining barges in tow and proceeded into said Assateague harbor with them where said barges safely anchored.

Libellant alleges that as a result of said Barge Dendron taking the beach as aforesaid, serious damage followed her as a consequence."

The claimant of the tug excepts on the ground that the libel shows no cause of action. It is not contended that no cause of admiralty action is alleged but that no cause of action in rem is stated, the contract set forth being entirely executory.

It is conceded by the libellant that if the action were wholly executory there would be no lien in rem and the exception would be good but it is urged that the tug, according to the pleading, had actually entered upon the contract by proceeding to the vicinity of Tom's Cove, Virginia, and by subsequently taking two of the three barges, and that as the contract was indivisible it was partly executed and not within the executory rule.

It is well settled that in order to defeat the jurisdiction of the court it must appear that the contract is wholly executory and that the vessel against which a lien is claimed "never entered upon the performance of the contract or any part of it." Judge Brown in The Monte A. (D. C.) 12 Fed. 331, 332. The exceptant here has been very industrious in citing authorities but none of them seems to be in point. The nearest is The Francesco (D. C.) 116 Fed. 83, decided May 20, 1902, by Judge McPherson in the Eastern District of Pennsylvania, where an action was brought for the breach of a towage contract and the jurisdiction of the court questioned upon an allegation that the contract was executory. The facts appear to have been that a tug, then in Philadelphia, was engaged to tow a ship from New York to

Philadelphia and in proceeding to New York took another vessel in tow which was abandoned on the voyage to assist a capsized schooner. The result was that the vessel in New York was delayed several days for which she sought to recover demurrage. It was contended that the fact of the tug having started for New York made a contract a partially executed one. It was held, however, that the fact of the tug starting for New York under the circumstances did not sustain the jurisdiction. Judge McPherson said:

"I am unable, however, to agree to the correctness of this position. It was necessary that the tug should proceed to New York in order that it might take hold of the Francesco, and the fact that the parties may have expressly agreed that the tug should proceed to that port and tow the bark thence to to Philadelphia imposed no more obligation upon the tug than if nothing had been said about proceeding to New York. The voyage thither would have been necessary, whether anything was said about it or not. What both parties had in mind was simply that the tug should furnish the motive power to bring the bark to the port of Philadelphia, and (except perhaps under unusual circumstances) the execution of such a contract would not be begun until the tug should be actually attached to the tow. Moreover, in the case now before the court, the tug was executing a contract of towage with the Bianchi, when it abandoned both contracts and took hold of the schooner. I think it would be an unwarranted refinement to hold that these two separate, independent contracts were being executed at the same time."

In this case there was no intervention of another vessel. The tug proceeded to the place where the vessels were and neglecting to take them in tow, proceeded into the harbor herself, where she remained until the next day, when coming for her tow, found only two vessels, one of the three having slipped her chain and gone ashore. The tug then took the remaining part of the tow and proceeded with it to destination. The case does not appear to be within The Francesco, and it seems to me that when this tug started to get the tow, she actually entered upon the contract. There was no reason for the tug to go to the tow except for the purpose of fulfilling the contract and in that sense it ceased to be executory from the time she started. It was provided that the tug should be "dispatched immediately to the scene where said barges were afloat * * * and to take said barges in tow." When the vicinity of the tow was reached, the barges were afloat and in readiness to be towed under the contract. It was only through the neglect of the tug to take hold, in consequence of which one of the barges was lost, that full performance was rendered impossible. For these reasons I conclude that the libel was properly brought in rem.

Judge Benedict had a similar question to the one under consideration before him in The Tow-boat James McMahon, 10 Ben. 103, 107, Fed. Cas. No. 7,197. There the McMahon was engaged to tow a a boat from New York to Troy for $15, which was paid in advance. It was alleged that the tug entered upon and performed the voyage but neglected to tow the boat although she was waiting at the place agreed upon in readiness to be towed. On exceptions to the libel it was alleged that the case was one of executory contract and that no lien attached to the tug under the circumstances, but this contention was overruled and Judge Benedict said:

"In this case, then, it is a mistake to suppose that the fact that the canal boat was never taken hold of by the tow-boat, is sufficient to exempt the tow-boat from liability. That fact is not material in a case like this, where the tow-boat agreed to come and take the canal boat and tow her to Troy, on a certain voyage, and where the voyage agreed on was paid, and the voyage not abandoned, but made; the canal boat not being taken, simply because the tow-boat neglected to stop for her. In such a state of facts, the liability of the tow-boat was complete from the moment of her omission to stop for the Mars, and she is liable to be proceeded against in rem for the damages resulting from such violation of the contract."

It is doubtful if the allegations here would constitute an averment of payment but I do not see that it makes any difference. In many other respects the case is in principle similar to the one under consideration.

Exception overruled.