## THE DIRECTOR.

*(District Court, D. Oregon.  March 5, 1886.)*

1. **JOINDER OF CAUSES OF ACTION IN REM AND PERSONAM.**
   The admiralty rules from 12 to 20, inclusive, relating to joinder of causes of action, do not apply to cases not therein enumerated; but the same, under rule 46, may be proceeded with, in this respect, in such manner as the court may deem expedient for the administration of justice.

2. **SUIT ON A CHARTER-PARTY.**
   In a suit by a shipper for the non-performance of a contract of affreightment, the facts which establish the liability of the master also give the libelant a lien on the vessel for the amount of his claim, and therefore it is proper and expedient that the proceeding against the owner or the master and the vessel should be joined in one libel.

3. **REPLEVIN IN ADMIRALTY.**
   When the possession of personal property has been changed by means involving the breach of a maritime contract concerning the same, or such possession is wrongfully withheld contrary thereto, the owner or other person entitled, under the circumstances, to the possession thereof, may maintain a suit in admiralty to obtain the same.

4. **DAMAGES—GENERAL AND SPECIAL.**
   Damages that are not the necessary result of the act complained of, and therefore not implied by law, are special, and the facts constituting them must be particularly stated in the libel.

Suit on Charter-party.

*C. E. S. Wood* and *John W. Whalley*, for libelants.

*Thomas N. Strong*, for master and claimants.

DEADY, J.   This suit was brought by the libelants, Alexander Balfour, Stephen Williamson, Robert Balfour, Alexander Guthrie, and Robert B. Foreman, doing business in this port as Balfour, Guthrie & Co., on November 22, 1885, to recover the possession of 16,868 bags of wheat, weighing 985,484—2,240 gross tons; and $4,600 damages for the non-fulfillment of a contract of affreightment thereabout.   On reading and filing the libel, an order was made thereon, allowing process to issue as prayed for therein, on which the vessel and wheat were subsequently arrested.   On January 4th, the master, William D. Bogart, filed a claim of ownership for William W. Trombull.   The case was argued and submitted on exceptions to the libel.

From the latter it appears that on October 3, 1885, William D. Bogart, master of the British bark Director, then lying at this port, made a charter-party with W. J. Burns, the local agent of the libelants, whereby he contracted to carry on said vessel, at 42s. 6d. a ton, a cargo of wheat to a port in the United Kingdom; that between said date and October 8th said vessel was laden by the libelants with the wheat aforesaid, consigned to their own order, for which the master signed two bills of lading, one of which was delivered to the libelants, and on November 14th remailed by them to said agent for re-

turn to said master; that in and by said charter-party it was expressly agreed that said vessel was "tight, stanch, strong, and in every way fitted for such voyage," when in fact she was so unseaworthy that as soon as the cargo was on board she commenced to leak so badly she could not proceed on her voyage, and her cargo was discharged; that said vessel had been in a leaky and unseaworthy condition on her voyage from Hong Kong to this port, and prior thereto, during which she made water at the rate of three inches an hour, until relieved of her cargo in the Columbia river and at Portland, when the leak became immaterial; that said leak was caused by an inherent defect and unseaworthiness of said vessel,—all of which was well known to said master at the date of said charter-party and long prior thereto, and was then fraudulently concealed from the libelants by said master, and afterwards, while the vessel was loading, by preventing the working of her pumps otherwise than secretly between 9 P. M. and midnight; that by reason of said false warranty the "libelants have lost a sale" of said wheat, negotiated and contracted in London on October 5, 1885, "whereby they are damaged in the sum of $4,000, and also by the loss of $100, the premium paid on marine insurance on said wheat while on board, and $500 of expenditures contingent on the transaction.

The prayer of the libel is for due process against the vessel and the wheat, to the end that the former may be condemned and sold to pay said damages, with interest and costs of suit, and the latter delivered to the libelants free of charges or liens; and that the master be cited to appear and answer the libel, and the charter be annulled and declared void from the beginning.

The exceptions to the libel are to the effect: (1) It "misjoins" a suit *in rem* against the vessel with a suit *in personam* against the master; (2) it "misjoins" a cause of suit for a breach of the warranty in the charter, and to avoid the same on account of the fraud of the master; (3) it does not show that the libelants are the owners of the wheat, or what, if any, interest or claim they have therein or thereto; and (4) the allegation in article 11 concerning the sale of the wheat is uncertain and insufficient.

As preliminary to the consideration of the questions made by these exceptions, it may be premised that, in the absence of the owner or of his special representative, the master of the Director was authorized to make this charter-party, and to thereby contract, as he did, for the carriage of this wheat, and the fitness of the vessel for the service. The transaction was within the scope of his ordinary power, as master, while engaged in the navigation of the vessel in a foreign port, and the vessel and owner are each liable for his fraud or misconduct in making said contract, or the failure to perform the same. *The Zenobia,* Abb. Adm. 48; *U. S.* v. *The Malek Adhel,* 2 How. 234; *Hurry* v. *Hurry,* 2 Wash. C. C. 149; *Ward* v. *Green,* 6 Cow. 175; *The Tribune,* 3 Sum. 149; 1 Pars. Shipp. & Adm. 276, note 3; 2 Pars.

Shipp. & Adm. 8, 10, 12. But it must be understood that the vessel is not liable for a breach of a contract of affreightment so long as it is wholly executory, though the master and owner are. *The Ira Chaffee*, 2 Fed. Rep. 401. But as soon as the performance of the contract is commenced a lien exists on the vessel in favor of the shipper or charterer, and a suit *in rem* may be maintained against the same for any liability of the master or owner arising on or growing out of such contract. *The Hermitage*, 4 Blatchf. 475; *The Monte A.*, 12 Fed. Rep. 332; *The Keokuk*, 9 Wall. 519; *The Zenobia*, Abb. Adm. 80; *The Windermere*, 2 Fed. Rep. 722.

In this case the performance of the contract had commenced by the lading of the cargo, and the master, owner, and vessel are each liable thereon. Such being the case, can the libelant pursue his remedy against the vessel and the master, the one being *in rem* and the other *in personam*, in one suit? The point has been contested in the American courts, and yet, but for a *dictum* of Mr. Justice STORY in the case of *Citizens' Bank* v. *Nantucket S. B. Co.*, 2 Story, 57, I do not think there would be any question about it. That suit, which was brought against the company as a common carrier, was decided in its favor, on the ground that the carriage of bank-bills was not within the scope of its ordinary employment, and therefore it was not liable on the master's undertaking in respect to the same; to which Mr. Justice STORY added:

"In the course of the argument it was intimated that in libels of this sort the proceedings might be properly instituted both *in rem* against the steamboat, and *in personam* against the owners and master thereof. I ventured at that time to say that I knew of no principle or authority, in the general jurisprudence of the courts of admiralty, which would justify such a joinder of proceedings, so very different in their nature and character and decretal effect."

It is said that Homer sometimes nods; and, taking this instance as an illustration, I think the same may be said of the learned and enlightened jurist who did so much in his day to establish and maintain the admiralty jurisdiction of the American courts, unhampered by the arbitrary restrictions once imposed thereon, in England, by the jealousy of the common-law courts and lawyers, and to formulate for them a comprehensive and convenient rule of procedure.

In a suit for a breach of a charter-party or contract of affreightment, whether brought against the master, owner, or vessel, there is no substantial difference, either in allegation, proof, or decree. The liability in either case grows out of the same facts, and the relief sought and obtainable is the same. The only difference is in the enforcement of the decree, and that is merely a difference in degree; the enforcement of the one given in the suit *in rem* being, in the nature of things, limited to the sale of the vessel proceeded against, while the one in the suit *in personam* may be enforced by an execution against the property of the defendant generally. This being so, every

argument founded on convenience and economy is in favor of their joinder in one suit.

In the consideration of this question in *The Clatsop Chief*, 7 Sawy. 274, S. C. 8 Fed. Rep. 163, I said:

"My own impression of the matter is with Mr. Benedict, when he says (Ben. Adm. § 397) 'that whenever the libelant's cause of action gives him a lien or privilege against the thing, and a full personal right against the owner, then he may, by a libel properly framed, proceed against the person and the thing, and compel the owner to come in and to submit to the decree of the court against him personally in the same suit, for any possible deficiency.' It is a question simply of procedure, and should be determined mainly, if not altogether, upon considerations of fitness and convenience; and every argument drawn from this source is in favor of the joinder of the remedies *in rem* and *in personam*, whoever the person may be, and pursuing them in one libel, as one suit."

By the admiralty rules, from 12 to 20, inclusive, adopted by the supreme court in 1845, and since the decision of the case of *Citizens' Bank* v. *Nantucket S. B. Co.*, *supra*, this subject is regulated in some of its phases, but not in the case of a suit for a breach of a charter-party or contract of affreightment. By these, in the case of a suit for wages, pilotage, or damage by collision, the libelant may proceed against the ship *and* master. The mode of proceeding allowed by these rules is considered to be exclusive of any other in the cases to which they apply. *The Richard Doane*, 2 Ben. 112. But, under admiralty rule 46, this court may proceed, in all other cases in this respect, according to such rule as may be deemed most expedient for the due administration of justice. Under this authority the district courts have generally assumed that it is not only expedient, but according to the general rule of admiralty procedure, in a cause upon a contract of affreightment, to proceed against the master and the vessel in one suit; and, as I have already said, in my judgment, there is no doubt of the propriety and legality of so doing. *The Monte A.*, 12 Fed. Rep. 336; *The Zenobia*, Abb. Adm. 52; *Vaughan* v. *Six Hundred and Thirty Casks of Sherry Wine*, 7 Ben. 507.

In the latter case the suit was brought on a bill of lading against the goods, and the consignee thereof, to recover the freight thereon. The libel was excepted to on account of the joinder of the causes of action against the *res* and the person. Mr. Justice BLATCHFORD, in disposing of the exception, says: "This exception is overruled. The cause of action arises out of a contract which, if the respondents are liable on it, also binds the property. There is no good reason for not joining the causes of action."

The second exception is not well taken. If a court of admiralty has jurisdiction of a suit to declare this charter-party void for the fraud of the master, leading to and inducing its execution by the libelants or charterer, the joinder, in such suit, of a claim for damages on account of such fraud, does not appear to be improper; but if it has not such jurisdiction, then the prayer for relief against such charter-

party, by having it declared void *ab initio*, should have been excepted to alone, and on that ground.

The third exception is also disallowed. The right to maintain a suit in admiralty for the possession of this wheat is not challenged by this exception; but the point made thereby is that it does not appear that the libelants have such an interest in the property as entitles them to maintain such suit at all. When the possession of personal property has been changed by means involving a breach of a maritime contract concerning the same, or such possession is wrongfully withheld contrary thereto, the owner or other person 'entitled, under the circumstances, to the possession thereof may maintain a suit in admiralty to obtain the same. *In re 528 Pieces of Mahogany*, 2 Low. 323, and cases there cited; 1 Kent, Comm. 379.

Upon the facts stated, the libelants, as against the vessel and the master, are entitled to the possession of the wheat, and may maintain an action to recover the possession of the same. True, it is not alleged in so many words that the libelants are the owners of the wheat, though such is the fair inference from the facts stated. Nor is such an allegation necessary. It does appear that the libelants had the possession and control of the wheat, and placed it on board the Director for carriage to Europe, on their own account, under the stipulations of the charter-party, and that the master, in violation thereof, has discharged the same on the dock in this port. Except under special circumstances, a carrier is not allowed to dispute the title of the person who delivers goods to him for transportation. *Rosenfield* v. *Express Co.*, 1 Woods, 131. In Ben. Adm. 476, a precedent is given of a libel *in rem* against certain merchandise, by the consignee thereof, for the possession of the same, that was withheld by the master of the vessel on which it was brought from Liverpool to New York, on a disputed claim for average contribution. It is not alleged that any one owned the merchandise in question, but only that it was shipped by John Brown, of Liverpool, and consigned to the libelant. The master of the Director is not at liberty to question the libelants' right to the possession of this grain contrary to or outside of the stipulations of the charter-party. *Prima facie*, they are the owners of it, and entitled to maintain an action to regain the possession thereof, which they appear to have parted with on the faith of the master's representation that his vessel was "tight, staunch, and strong, and in every way fitted" for the voyage she was about to undertake, when in fact she was not, and he knew it.

This proceeding is, in substance, the same as the common-law action of replevin. A special property in the goods in question is sufficient to enable the plaintiff to maintain that action against any one but the general owner. Chit. Pl. 187; *Dillenback* v. *Jerome*, 7 Cow. 300, note; *Smith* v. *James*, Id. 328; *Portland Bank* v. *Stubbs*, 6 Mass. 426. In the latter case the court held that the consignee of a cargo of salt shipped at Liverpool for Boston might maintain replevin

against the master for the same at Portland, Maine, on the refusal of the latter to proceed to Boston with the salt, or deliver it to the consignee at Portland.

The fourth exception is taken to so much of the eleventh article of the libel as alleges that, by reason of the premises, the "libelants have lost a sale of the aforesaid cargo, negotiated and contracted in London, October 5, 1885," to their damage $4,000. This is not a statement of general damages suffered by the libelants on account of the failure to carry the wheat according to contract, but an attempt to state a case of special damages arising therefrom; and, considered in this light, I think it is clearly insufficient. For instance, the loss of this sale did not necessarily damage the libelants. That depends on circumstances concerning which the libel is silent, such as the subsequent rise or fall of the market; and if they were injured at all by the loss of the sale, there are no facts stated showing, or tending to show, how they were injured or the amount of the damages. In order to prevent surprise to the adverse party, special damages, or such as are not the necessary consequence of the act complained of, and are not therefore implied by law, must be particularly stated. 1 Chit. Pl. 440–444; *Squier* v. *Gould*, 14 Wend. 160; *Stevenson* v. *Smith*, 28 Cal. 103.

This exception is allowed.