### BRILL et al. v. PECKHAM MOTOR TRUCK & WHEEL CO.[1]

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

#### No. 139.

PATENTS—CONSTRUCTION OF CLAIMS—SUPPORTS FOR STREET-CAR BODIES.

Claims 1 and 2 of the Brill patent. No. 478,218, for an improvement in car trucks, designed to prevent the oscillation or galloping movement of a street-car body incident to its being supported on a comparatively short wheel base, by the use of both spiral and elliptical springs, are limited by the prior art to the particular construction shown in the specification, in which the two sets of springs are so arranged that the elliptical springs are not brought into action until the spiral springs, which normally support the weight of the car, have begun to compress. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Henry P. Wells, for appellant.

Francis Rawle and Frederick P. Fish, for appellees.

Before WALLACE, Circuit Judge, and WHEELER and THOMAS, District Judges.

WALLACE, Circuit Judge. If the first and second claims of the patent in suit (letters patent to George M. Brill, No. 478,218, dated July 1, 1892) require a construction limiting the combination therein specified to one in which the spiral springs and elliptical springs are so arranged that the latter are not brought into action until after the former have begun to compress, the car trucks of the de-

---

[1] Rehearing ordered.

fendant do not infringe the claims. In the car trucks of the defendant both sets of springs are brought into action, and begin to compress simultaneously when the weight upon them is greater than the normal weight of the car. In granting the order for a preliminary injunction, which has been appealed from, the court below adopted the construction which had apparently been placed upon these claims in the suit of Brill v. Railroad Co. (C. C.) 103 Fed. 289. In that action the infringement of these claims, as well as that of several other claims in the patent, including Nos. 9, 10, 11, and 14, was alleged by the complainant, and the question of their validity, as well as their infringement, was strenuously contested; and upon final hearing the court adjudicated the validity of all the claims, and held them to be infringed by the defendant. Inasmuch, however, as the infringing car trucks embodied the combinations specified in all the claims, it was not necessary in that case for the court to accurately define claims 1 and 2, in order to determine what, if any, limitations not expressed therein were to be read into them by implication.

The two claims are as follows:

"(1) In a motor truck, the combination, with a stationary frame supported upon the running gear, said frame having sections extending outwardly from the axle, of a movable frame supported upon said truck, spiral springs located between the movable and stationary frames, and elliptical springs located between the extended sections of the said rigid frame and the movable frame, substantially as described.

"(2) In a truck, a spring-supporting frame supported upon the running gear by saddles, and having sections extending outwardly from the axles, a movable frame having like extensions, spiral springs located between the saddles and movable frame, and elliptical springs located between the spring-supporting frame and the movable frame, substantially as described."

In the opinion in Brill v. Railroad Co., the court used this language:

"The gist of the invention consisted in combining, with the frame of the truck and the spiral springs, another class of springs, viz. elliptical springs, between the car body and the extensions of the independent frame. The elliptical springs are slower in their action than the spiral springs, and neutralize the longitudinal oscillation of the car."

The record in that suit is a part of the record now before the court, and upon this record, supplemented by the depositions and documents introduced upon the motion for the preliminary injunction, the appellants insist that a narrower interpretation should be placed upon the claims than seems to have been given them in the former suit and accepted by the court below. They urge that the prior state of the art does not permit a construction of the claims which will include every combination of spiral and elliptical springs with the other elements of either claim, and that the claims must be limited by the language of the description in the patent to a combination in which the springs have a definite mode of operation.

The patent, so far as concerns the employment of the springs, is for an invention which is intended to diminish the end vibration or oscillation of the car body, known as "galloping," when moving over the track, and which in the long cars, having a comparatively short wheel base, is especially obnoxious. Its distinguishing feature is the employment of two kinds of springs,—spirals, for sup-

porting the car body above the axle boxes, and elliptic, for supporting it at the ends. Brill was not a pioneer in the use of springs for this purpose. Among the patents granted before the filing of the application for the patent in suit, the two in the prior art showing the nearest approximation to the invention of Brill are No. 409,-993, granted August 27, 1889, to Benjamin F. Manier, and No. 419,876, granted January 21, 1890, to Edgar Peckham. Manier's patent describes the employment of springs for the purpose of obviating the rocking or oscillating movement of the car body. The specification contains this statement:

"Preferably I employ spiral springs, G, as shown in figure 1, for supporting caps, I; but, if desired, the elliptical springs, g, could be employed, as shown in figure 3; or other forms of springs may be used, as found convenient and desirable, the particular form of spring not forming a part of the present invention."

This patent shows every element of the first claim of the patent, in suit broadly considered, except the conjoint use of spiral and elliptical springs; one of the drawings showing spiral springs only, and the other showing elliptical springs only. The patent does not show the combination of the second claim, because the saddles are absent.

The invention in the prior patent to Peckham "consists in a novel construction of a car truck designed to afford spring supports under the end portions of the car body as well as the axles, and thus support said body nearly throughout its length, and also obviate, in a great measure, the vertical oscillation of the same when moving over an undulating track." The specification describes the spiral axle-box springs of the patent in suit, and "suitable springs" for supporting the car body at the ends, "which may be either of the spiral species, as shown at tt, or of the so-called 'semielliptical form,' as shown at t¹, in figures 4 and 5 of the drawings; which latter form of spring is disposed crosswise of the truck, and rests with its ends in suitable shoes." It also shows saddles mounted like those of Brill upon the axle boxes. Of this patent the expert for the complainant makes this statement:

"While the construction shown in this Peckham patent clearly does not embody the combination recited in the several claims of the Brill patent in suit, and while the Peckham patent contains no indication that any advantage would be attained by the use of a semielliptical spring across each end of the car in conjunction with spiral springs supporting the car body over the journal boxes, I am inclined to think that the construction embodying the semielliptical springs would measurably attain the result that is attained by the conjoint use of the spiral and elliptical springs as embodied in the Brill truck, and that a car having the truck structure shown in figures 4 and 5 of this Peckham patent would be less liable to excessive longitudinal oscillation than any of the trucks of the prior art heretofore considered."

It thus appears that it was old in the prior art to employ, for the purpose of obviating the oscillation of the car body, all the parts enumerated in the first and second claims, except the two kinds of springs in the same car truck, and that the only novelty in the inventions of those claims, details of construction being disregarded, consists in the substitution of both spiral and elliptical in the place of either spiral or elliptical springs. Indeed, the inventions are wanting even in this measure of novelty, and reside merely in the sub-

stitution of elliptical for the semielliptical end springs. The claims are not limited to longitudinal end springs, as the specification points out they are only preferably employed, and the circumstance that the semielliptical springs of the Peckham patent extend transversely instead of longitudinally is therefore immaterial. It is manifest that the inventions secured by the claims are of a very narrow character, and that they · cannot receive the broad construction which their language would authorize without affirming their invalidity for want of patentable novelty. It would be merely an aggregation of old parts to supplement the spiral springs by the elliptic springs, or the elliptic springs by the spiral springs, and would not involve invention, unless some new mode of operation, due to the conjoint action of the two kinds of springs, should result from doing so. It is asserted that a new result is obtained from the conjoint use of the two kinds of springs, in that it breaks the rhythm of the impulses imparted by each kind, and thereby decreases the amplitude of the oscillation of the car. But when it is shown that the substitution merely consisted in employing elliptic springs in conjunction with the spiral springs, instead of semielliptic springs in conjunction with such springs, and that this substitution produces merely an improved, and not a new, result, the structural changes in form and arrangement which may be discovered in the specification afford the only features of novelty which can support the claims.

A reference to the language of the specification shows that the patentee contemplated special features of construction and arrangement of the springs, and made them a part of his invention as disclosed in the patent. The specification, in describing the springs, uses this language:

"The spiral springs, which are supported by or about the axle boxes, normally take the weight of the car. Between the extended sections of the upper chord and the side beams [that is, near the ends of the truck] I place elliptical springs, which preferably extend longitudinally of the truck, and which are so disposed that they will not be brought into action until the weight of the load on the axle-box springs begins to depress said spring abnormally. Then the elliptical springs begin to act, and assist the spiral springs in resisting the pressure of the load."

Again he says:

"It is therefore clear that more than the ordinary load is intended to be carried on this structure, and for this reason more than ordinary devices for spring-supporting the car body are necessary. To this end I supplement the axle-box springs by placing elliptic springs of slower action between the extended portions or sections of the said beam and upper chord, and so arrange them in respect to each other that the elliptic springs will not come into play until after the axle-box springs have begun to compress, and the action of the spirals in lifting the car body is continued after the elliptic springs have ceased to act."

In the detailed description of the various parts, the specification points out that the elliptic springs are not secured at the top to the upper chord, but are held in place by a cap having downward extending legs:

"The cap is interiorly chambered, so as to permit the elliptic spring, 341, to move within it, the legs, 46, acting to keep the said spring perpendicular; while space is left between the inner top portion of the cap and the top of the

spring to permit the upper chords to be depressed some distance before the cap begins to depress the elliptic spring."

Thus, a space is left between the upper chord, upon which the pressure from the car body is exerted, and the top of the spring, which will prevent compression of the elliptic springs until compression of the spiral springs has already taken place.

If the patentee had attempted to do so, it would have been difficult to frame a specification which more industriously sets forth as essential to his invention such a construction and arrangement of the spring devices that the elliptic springs will not be brought into play until the spiral springs have been compressed by the weight of the car body and the added load, "until the weight of the load on the axle-box springs begins to depress said springs abnormally." This characteristic of the invention must be imported into the claims, and would have to be if the qualifying term, "substantially as described," had not been incorporated into them.

We do not overlook the consideration that in other claims of the patent this functional characteristic of the invention is made a limitation in terms. Those claims, however, differ in other respects from the two claims in controversy. There are 28 claims in all, and some of them are merely duplicates of others, varying in phraseology, but not in substance. They were obviously framed to cover any possible theory of the invention which is hinted at in the specification, and which the exigencies of an infringement action may require.

The case is one in which it is apparent that the complainant cannot ultimately prevail, and, following the practice sanctioned by Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, one in which the bill should be dismissed.

The order granting the injunction is therefore reversed, with costs, and the cause remitted to the court below, with instructions to vacate the injunction and dismiss the bill, with costs.