## THE OCEANO.

### (District Court, S. D. New York. August 2, 1906.)

**1. ADMIRALTY—SET-OFF—MATTERS ARISING OUT OF OTHER TRANSACTIONS.**

Matters arising out of independent transactions not connected with the one on which a suit is brought cannot be pleaded as a set-off in admiralty.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, §§ 327–333.]

**2. SAME—JURISDICTION.**

Where a contract sued on is not maritime, a court of admiralty is without jurisdiction of the subject-matter, which cannot be conferred by consent, and the objection may be taken at any time.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Admiralty, §§ 1–14, 131–135.

Jurisdiction as to matters of contract, see notes to the Richard Winslow, 18 C. C. A. 347; Boutin v. Rudd, 27 C. C. A. 530.]

**3. SAME—SUIT FOR BREACH OF CHARTER—PROCEEDING IN REM.**

Libelant chartered a vessel and made advances for her disbursements to the master, pursuant to the terms of the charter party, which provided that such advances should be deducted in all cases from the freight and should be so receipted for by the master on the bills of lading. They were so receipted for, but in settling the freight at the end of the voyage, through oversight or mistake, a part of such advances were not deducted, and the owner of the vessel refused to repay the same. *Held*, that a suit to recover the same was one for breach of the charter, of which a court of admiralty had jurisdiction, and that it might be brought in rem against the vessel, which was bound for the performance of the contract.

In Admiralty. On exceptions to report of Herbert Green, Esq., commissioner.

Wing, Putnam & Burlingham, for the libelant.

Convers & Kirlin (John M. Woolsey, of counsel), for claimant.

HOUGH, District Judge. The libelant chartered the Oceano for a voyage from Philadelphia to Japan. The charter party provided that "funds for the vessel's disbursements" * * * shall be "advanced by the charterer, on account of the freight, to the master, at the port of loading" * * * "such advance to be deducted in all cases from the freight earned under this charter party; and the master shall so receipt for the advance on the bills of lading." Funds for necessary disbursements were accordingly furnished by the libelant, a bill of lading duly issued for the cargo, and a receipt for the advances spread thereon and signed by the master, reciting that certain moneys had been provided "on account of the freight under this bill of lading," and stating that such moneys should be "deducted in all cases from the freight earned" under the same.

The Oceano having arrived in Japan, the libelant's agent in Kobe settled her accounts, and paid over the balance of the freight moneys; but by some unexplained error, instead of deducting on final settlement the whole amount advanced in Philadelphia he deducted £300 less than that sum. This erroneous settlement was reduced to writing and signed by the same master who had receipted for the

actual advance. For the sum thus remaining unpaid, after due demand, the libelant brings this action in rem.

The claimant interposes three defenses, all of which have been overruled by the commissioners. (1) It is asserted that Weir & Co., who are managers of the joint-stock company owning and claiming the Oceano, are also owners of certain other vessels recently chartered to the libelant, and that by reason of such chartering the libelant is indebted to Weir & Co. in an amount exceeding that sued for in this action. Such a set-off not only has no relation to the transaction out of which this litigation arose, but is not even owned by the claimant herein. It cannot be allowed. Emery v. Tweedie Trading Co. (D. C.) 143 Fed. 144. This is the only defense contained in the answer. But the claimant now urges by its exceptions, (2) that the commissioner should have found that the subject-matter of this controversy was not within the jurisdiction of admiralty, and (3) should have further found that the demand in suit created no maritime lien even if it be considered enforceable by an admiralty action in personam.

The libelant rejoins that the claimant by appearing, filing claim, executing the usual stipulation for value, and admitting the jurisdictional averments of the libel, has waived whatever advantage these defenses might have conferred if duly pleaded. Consent, however, cannot give jurisdiction, if it does not exist as to the subject-matter of the suit; if the contract sued on be not maritime, jurisdiction of the subject-matter is lacking; while if there be no maritime lien there is no foundation for a decree in rem. The Monte A. (D. C.) 12 Fed. 333.

The claimant's method of presenting these jurisdictional points is certainly unusual, but sufficient to require their consideration. The John C. Sweeney (D. C.) 55 Fed. 540. The claimant's real objecttion to the demand in suit is that libelant is in truth suing for money had and received; that all the occurrences on which the suit is based arose after the fulfillment of the charter party, that the action is really therefore in assumpsit and lies only at common law. It appears to me, however, that the facts found herein constitute on the part of the claimant a breach of its charter party obligation to repay to the libelant the entire amount of the Philadelphia advance. Whether the settlement at Kobe be regarded as an overpayment by the libelant or an underpayment by the claimant, the fact remains that the claimant procured an advance of its chartered freight, promised by its charter party to repay it, and has persistently refused to do so. In my opinion, therefore, this is really a cause of affreightment, and admiralty has "jurisdiction of all contracts of affreightment though the damages may in any case be somewhat indirect." The A. M. Bliss, 2 Low. 103, Fed. Cas. No. 274. The damages here arise in a singular manner, but the same doctrine is laid down in Church v. Shelton, 2 Curt. 271, Fed. Cas. No. 2714, where the "indirection" is even more marked. It follows from the view taken of the subject-matter of this action that the cause may be brought in rem. The charter party especially provides that to the due execu-

tion thereof there shall be bound not only the parties themselves, but also "the vessel's freight, tackle and appurtenances, and the merchandise to be laden on board." It is truly pointed out by the commissioner that these words taken literally create a conventional lien on "tackle and appurtenances" even if there be no lien upon the steamer. The quoted expression is possibly, if not probably, a misprint for "vessel, freight, tackle and appurtenances." But whether this be true or not I think jurisdiction should be sustained on broader grounds. As soon as the performance of a charter party is commenced a lien exists on the vessel in favor of the shipper or charterer, and a suit in rem may be maintained for any liability of the master or owner arising therefrom. The Director (D. C.) 26 Fed. 708. Damages sustained by a charterer through breach of a charter contract constitute a lien on the vessel. The Panama, Olcott, 343, Fed. Cas. No. 10,703.

It cannot be denied that unless explicitly excluded by the contract of charter party both shipper and owner may pursue their remedies for breach of contract by actions in rem. I think that much stronger words than those last quoted from this charter party should be required to oust the charterer of his usual remedy. It is strongly urged that the A. M. Bliss, supra, is inconsistent with recognition of a right of action in rem. But the learned court there drew a distinction between "loans made on a pledge of the freight" and "advances of freight." The former do not imply a pledge of the ship, and failure to pay constitutes no breach of the charter party. But a failure to repay an "advance of freight" on the completion of the voyage was there distinctly recognized as being a breach of the charter party. As above stated, I consider the claimant's action herein as amounting to a deliberate refusal to repay an "advance of freight" and therefore constituting a breach of the charter party that gave birth to the freight.

Let the commissioner's report be confirmed, and a decree entered in accordance with his recommendations.