WILSON et al. v. PENINSULA BARK & LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1911.)

No. 2,105.

SHIPPING (§ 51*)—CHARTER—ACTION FOR BREACH.

Libelant chartered respondent's vessel to carry a number of cargoes of timber, to be loaded from the water alongside. On reporting for the first load the quantity on hand was insufficient to make a full cargo, owing to the closeness of inspection by a purchaser from libelant. The master finished loading what there was on Sunday morning. Monday was a holiday, and libelant had a large quantity of the timber near by which could have been delivered at the vessel by Tuesday morning, which was the next loading day under the charter, but the master refused to wait and sailed with the amount then on board, and respondent refused to return or further carry out the charter. *Held*, that such action was not justified, and was a breach of the charter, for which libelant was entitled to recover damages.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 203–210; Dec. Dig. § 51.*]

Appeal from the District Court of the United States for the Western District of Michigan.

Suit in admiralty by the Peninsula Bark & Lumber Company against the steamer Mathew Wilson, Mathew Wilson, and others, claimants. Decree for libelant, and claimants appeal. Affirmed.

William Carpenter, for appellants.
E. S. B. Sutton, for appellee.

Before KNAPPEN, Circuit Judge, and McCALL and SATER, District Judges.

McCALL, District Judge. This case is here on an appeal from the United States District Court for the Western District of Michigan. It is a proceeding in admiralty. The libelant, the Peninsula Bark & Lumber Company, a corporation, with its main office at Sault Ste. Marie, on October 2, 1908, filed its libel against the steamer Mathew Wilson and its owners, alleging a breach of contract and praying for the issuance of an attachment and for the recovery of $1,500 as damages. Process was issued as prayed for. The libelees answered and filed a cross-libel.

At the hearing much evidence was introduced. The court below decreed in favor of the libelant for $1,008, and dismissed the cross-libel, except $75 was allowed cross-libelant as demurrage for one day's delay while loading the vessel. Judgment in favor of libelant for the net amount of $997.53 and eight-tenths of its costs was rendered. From which decree and judgment the libelees appealed.

The controlling facts disclosed by the testimony are substantially as follows: The libelant had contracted to furnish certain hemlock timbers at the government's locks in Sault Ste. Marie. It had purchased these timbers from the Worcester Company under a contract which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

required the latter company to deliver the timbers to the libelant, "f. o. b. water, delivered alongside boat at Chassell." It was necessary for the libelant to transport or cause to be transported the timber from Chassell to Sault Ste. Marie for delivery. For this purpose, on July 25, 1908, the libelees entered into the following contract with the libelant:

"On the part of the owners of the steamer 'Mathew Wilson,' we hereby agree to carry approximately one million feet of 12-12 hemlock timbers from Chassell, Mich., to Sault Ste. Marie, Mich.; said timbers to be delivered on or before November 15, 1908. The commencement of said delivery to be at your call in about ten days.

"The price for delivering said timber to be $1.50 per M.

"Said timber to be received in sufficient water alongside of boat, either in rafts or cribs, and to be delivered at Sault Ste. Marie on dock as far away from the boat as the boom will reach; you to care for the timber as soon as it is cast from the boom."

The first notice that timber was ready for transportation, and the first call for the vessel was given and made by the charterer August 18, 1908, as appears from the following telegram, addressed to William Wilson:

"We chartered steamer Mathew Wilson some time ago, Chassell to Soo. Michigan, haul timber. No word since. Want to know at once when we can expect it. Three loads ready. Wire answer."

In response to this call, the vessel arrived at Chassell on Thursday, September 3d. After the hold was filled with certain lumber destined to Muskegon, which the vessel was at the time also engaged in transporting, they proceeded on Friday, September 4th, in the afternoon to load the hemlock timbers on the deck of the vessel. The notice of August 18th stated that the charterer had "three loads ready" yet because of the close inspection made by the representative of the government as the timbers were being put aboard the vessel, and perhaps from some other causes not important, it resulted that there were only about 153,000 feet of timber then actually at Chassell ready for transportation. The timbers were put aboard Friday afternoon, Saturday, and Sunday morning up to 9 o'clock. A short time thereafter, and without demanding any additional timber to complete the cargo, the vessel sailed for the Sault.

In point of fact, there were no other available timbers in the water at Chassell; but at Lake Linden and Baraga, some miles away, there were large quantities of hemlock timber ready to be delivered by the Worcester Company to libelant at Chassell, and to be transported thence by the libelees to Sault Ste. Marie under the contract in question. The owners did not on their own motion send the vessel back to Chassell for any more of the hemlock timber, and refused to do so when again called by the charterer.

The cause assigned for this course of conduct is in substance that the vessel, when first called by libelant and notified that three loads were ready, responded and on arrival at Chassell found only a small portion of that amount of timber ready, and, because the libelant failed to furnish sufficient timber, it was compelled to sail with a short cargo,

greatly to its damage, that this was a breach of the contract on the part of the libelant, and that it was therefore relieved from further performance thereunder, and was justified in canceling the charter.

The libelant, upon the other hand, insists that it had more than enough timber at Chassell to make a full cargo when the Wilson arrived, but that by reason of the close inspection made thereof a greater per cent. of it was rejected than it had any reason to anticipate. That it had large quantities of the timber at Baraga and Lake Linden, a few miles away, and had the captain of the Wilson demanded additional cargo, when it was apparent that there was not enough at Chassell for the purpose, it could have put alongside the vessel within a few hours timbers in quantity more than sufficient to have completed the cargo, and that too by the time that it could have been legally·required so to do.

This is based upon the facts that the Wilson finished loading on Sunday morning, and the Monday following was a legal holiday, and therefore the captain of the vessel could not of right have demanded more timber to be loaded earlier than Tuesday morning, and that, before that time arrived, libelant could and would have had timbers alongside the vessel more than enough to have completed the cargo, if more cargo had been demanded. This, in brief, presents the contentions of the parties. It would be useless to review here the testimony of the witnesses. We are satisfied with the conclusion reached by the trial judge. Whether or not it was determined not to return to Chassell for the remainder of the timber at the time the vessel sailed, or on or after its arrival at the Soo, sure it is that the shortness of cargo was the excuse for such determination. Under the contract and facts in this case, we are of the opinion that that was not sufficient to relieve libelees from their obligation under the charter party.

The charterer was only obligated to put the timber alongside the vessel for loading. This could not be done until the vessel was at Chassell. That there were no more timbers in sight on the Sunday morning when the Wilson sailed with a short cargo did not warrant the conclusion that the charterer would not have had timber alongside ready for loading on Tuesday morning, the earliest time that the captain of the Wilson could have legally demanded that more timber be placed alongside to complete the cargo.

Had he desired more cargo, he should have waited at Chassell until Tuesday morning. That he sailed with a short cargo rather than wait until the time when he could legally demand timber to complete his cargo (although he might be entitled to relief in a proper proceeding) did not warrant him either in refusing to return to Chassell for the remainder of the timber when called upon to do so, if called within the life of the contract, or to cancel the charter.

We do not interpret the correspondence as containing demand by libelant that the vessel go to Lake Linden for cargo.

There are other questions raised and discussed in this record, but we deem them unimportant.

The decree of the court below will be affirmed, with costs.