## THE SAIGON MARU.

### OSAKA SHOSEN KAISHA et al. v. PACIFIC EXPORT LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. May 9, 1921. Rehearing Denied June 13, 1921.)

No. 3609.

1. **Shipping** &=133—**Part performance of contract of affreightment creates lien on vessel for failure to take on cargo.**

    Where a charter for the shipment of lumber had been partly executed by the ship, by the loading of the hold cargo and part of the deck cargo, a maritime lien arises against the vessel for her refusal to take on the balance of the cargo, though such balance had not been cut at the mill.

2. **Shipping** &=133—**Liens of ship and cargo are not necessarily always reciprocal.**

    Though the lien of the ship on the cargo for freight and expenses and the lien of the cargo on the ship for its safe carriage and delivery are very generally reciprocal, it is not necessary that such reciprocity exists, and a lien may arise against the vessel before the vessel would have a lien against the cargo.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Libel by the Pacific Export Lumber Company against the steamship Saigon Maru, of which the Osaka Shosen Kaisha was claimant. Decree for libelant (267 Fed. 881), and the claimant and the United States Fidelity & Guaranty Company, as surety, appeal. Affirmed.

Huffer & Hayden, Frank A. Huffer, William H. Hayden, and Gerald H. Bucey, all of Tacoma, Wash., for appellants.

Wood, Montague & Matthiessen and Erskine Wood, all of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appellant steamship company is a Japanese corporation, and the owner of the steamship Saigon Maru, on which it agreed by charter party made with the appellee, a corporation of the state of Oregon, to carry from a port on the Columbia or Willamette river a full cargo of lumber, including a full deck load, to Bombay, India, and there deliver the same to parties to whom the appellee contracted to sell and deliver it. The other appellant is surety only. In pursuance of the terms of the charter party the steamship came to Portland, and there received from the appellee a full cargo of the lumber below deck, and 241,559 feet, board measure, on her deck, after which the captain of the ship refused to receive any more, on the ground that it would not be safe to do so.

The court below found and held that the ship could safely have taken on deck 308,441 additional feet of lumber, and for her failure to do so held her liable in rem for damages in the sum of $2,453.65, with interest at the rate of 6 per cent. per annum from August 2, 1917, for and on account of loss of profits suffered by the libelant by reason of

the ship's failure to carry and deliver at Bombay the 308,441 additional feet of lumber, and in the further sum of $5,192.86 for and on account of the claim for damages made against the libelant by the parties to whom the appellee had agreed to deliver the said additional 308,441 feet of lumber, with interest thereon at the rate of 6 per cent. per annum from August 2, 1917, besides costs.

The record shows, and the trial court so found in effect, that the 308,441 additional feet of lumber mentioned had not been sawed by the mill company from which the appellee had engaged it, because of the refusal of the captain to receive upon the deck of the ship more than the 241,559 feet that he had already taken aboard.

[1] The primary question in the case, therefore, is whether in such circumstances the appellee ever acquired any lien on the ship, growing out of the 308,441 feet that the captain refused to receive and carry, in view of the facts relating thereto. The respective positions of the opposing proctors may be briefly stated:

On the part of the appellee the contention is that, by taking on board a portion of the cargo covered by the charter party, the ship thereby entered upon the performance of the contract, and that a maritime lien thereupon arose against her and in favor of the libelant, not only as respects the portion so actually received, but also as respects the entire contemplated cargo; whereas the appellants insist that there can be no lien against or in favor of the ship as regards any portion of a contemplated cargo not actually placed on board, or in the custody of or under the control of the ship, and especially so in respect to such portion of the contemplated cargo as does not in fact exist. The proctors for the appellee concede that it is the settled law in this country that, where the contract remains wholly executory, the ship is not liable in rem for any breach of it; but they urge that where she partly executes the contract, as by taking on board a part of the cargo, as was done in the present case, she thereby becomes liable in rem for all breaches of the contract.

The learned judge of the court below sustained this position of the proctors for the appellee, citing in support of his ruling the cases of Scott v. The Ira Chaffee (D. C.) 2 Fed. 401; The Hermitage, 12 Fed. Cas. 27, No. 6410; The Williams, 29 Fed. Cas. 1342, No. 17, 710; The Director (D. C.) 26 Fed. 708; The Starlight (C. C.) 42 Fed. 167; The Oscoda (D. C.) 66 Fed. 347; The Helios (D. C.) 108 Fed. 270; The Oceano (D. C.) 148 Fed. 131; Wilson v. Peninsula Bark & Lumber Co., 188 Fed. 52, 110 C. C. A. 190.

The contention of the appellants that the cases so cited are not here applicable we think not well founded. On the contrary, the last case there cited, Wilson v. Peninsula Bark & Lumber Co., 188 Fed. 52, 110 C. C. A. 190, which is a decision by the Court of Appeals of the Sixth Circuit, while based upon a state statute—as appears from the record of that case, not, however, called to our attention until the petition for rehearing in the present case was filed—is, it seems to us, strikingly in point upon the question, urged by the appellants, that the 308,441 feet of lumber had not been sawed prevented the lien claimed by the appellee from attaching to the ship. In that case the court said:

"The controlling facts disclosed by the testimony are substantially as follows: The libelant had contracted to furnish certain hemlock timbers at the government's locks in Sault Ste. Marie. It had purchased these timbers from the Worcester Company under a contract which required the latter company to deliver the timbers to the libelant, 'f. o. b. water, delivered alongside boat at Chassell.' It was necessary for the libelant to transport or cause to be transported the timber from Chassell to Sault Ste. Marie for delivery. For this purpose, on July 25, 1908, the libelees entered into the following contract with the libelant:

" 'On the part of the owners of the steamer Mathew Wilson, we hereby agree to carry approximately 1,000,000 feet of 12–12 hemlock timbers from Chassell, Mich., to Sault Ste. Marie, Mich.; said timbers to be delivered on or before November 15, 1908. The commencement of said delivery to be at your call in about 10 days. The price for delivering said timber to be $1.50 per M. Said timber to be received in sufficient water alongside of boat, either in rafts or cribs, and to be delivered at Sault Ste. Marie on dock as far away from the boat as the boom will reach; you to care for the timber as soon as it is cast from the boom.'

"The first notice that timber was ready for transportation, and the first call for the vessel, was given and made by the charterer August 18, 1908, as appears from the following telegram, addressed to William Wilson: 'We chartered steamer Mathew Wilson some time ago, Chassell to Soo, Mich, haul timber. No word since. Want to know at once when we can expect it. Three loads ready. Wire answer.'

"In response to this call, the vessel arrived at Chassell on Thursday, September 3d. After the hold was filled with certain lumber destined to Muskegon, which the vessel was at the time also engaged in transporting, they proceeded on Friday, September 4th, in the afternoon, to load the hemlock timbers on the deck of the vessel. The notice of August 18th stated that the charterer had 'three loads ready,' yet because of the close inspection made by the representative of the government as the timbers were being put aboard the vessel, and perhaps from some other causes not important, it resulted that there were only about 153,000 feet of timber then actually at Chassell ready for transportation. The timbers were put aboard Friday afternoon, Saturday, and Sunday morning up to 9 o'clock. A short time thereafter, and without demanding any additional timber to complete the cargo, the vessel sailed for the Sault."

The claim of the vessel there was that, when first called by the libelant and notified that three loads of lumber were ready, it responded, and on arrival at Chassell found only a small portion of that amount ready, and because the libelant failed to furnish sufficient timber it was compelled to sail with a short cargo, and was therefore relieved from further performance under the charter. The court, however, held against that claim, and sustained the libel for damages, just as the court below did in the case now before us.

Originally ships were held liable in rem under contracts of affreightment which were purely executory, but that rule was at an early day so modified in this country as to hold them so bound only after actually entering upon the performance of the contract. The Ira Chaffee (D. C.) 2 Fed. 401; The Monte A. (D. C.) 12 Fed. 331; The J. F. Warner (D. C.) 22 Fed. 342; The Director (D. C.) 26 Fed. 708; The Starlight (C. C.) 42 Fed. 167; The Oscoda (D. C.) 66 Fed. 347; The Eugene (D. C.) 83 Fed. 222; Id., 87 Fed. 1001, 31 C. C. A. 345; (decision by this court); The Oceano (D. C.) 148 Fed. 131. See, also, The Margaretha, 167 Fed. 794, 93 C. C. A. 184; Wilson et al. v. Peninsula Bark & Lum-

272 F.—51

ber Co., 188 Fed. 52, 110 C. C. A. 190; The Helios (D. C.) 108 Fed. 270.

The decision of the Circuit Court of Appeals of the First Circuit in the case of The S. L. Watson, and The Thomas P. Sheldon, 118 Fed. 945, 55 C. C. A. 439, is far from holding that a maritime lien does not lie against a ship for the breach of a contract, where she has entered upon the performance thereof and performed it only in part. That such is not the doctrine of that decision is very clearly shown by the statement made by the court (118 Fed. 953, 55 C. C. A. 447) that it "might have reached the same conclusion by accepting that" of this court in the Eugene Case above cited.

In the Watson and Sheldon Cases the owner of the barges contracted that they should transport five cargoes of coal from Lambert's Point, in Norfolk, Va., to Providence, R. I., at 80 cents per ton. It was stipulated that the barges should "take turns in loading, as customary," and that in case coal was not ready to load them when they reported for cargo, within a reasonable time, the owners should have the option of loading on other coal, and returning next trip to load under the charter. One cargo was loaded on each of the barges, was transported and properly delivered, but neither barge took on any portion of the cargo for which a lien in rem was claimed against them. The court held that, so far as the three remaining cargoes were concerned, the contract was purely executory—saying:

"It has now become a settled practice, where several vessels make up a line, for the managers to make contracts that goods shall go forward by one or any other of the vessels of the line, depending on the times of arrival and other contingencies. It seems an extraordinary position, heretofore unheard of, that all the vessels of such a line can be held in solido for the breach of such contracts, so far as executory, even if parts of the cargoes contracted for had been sent forward. Yet this is necessarily the fundamental principle underlying the position of the libelant in the cases before us. To permit liens to be sustained as claimed by it in solido against sundry vessels would be to go entirely beyond the purpose of the admiralty law in granting them.

"The several vessels of a supposed line, and in this particular case, by analogy, the barges, so far as voyages not completed are concerned, are in no fault. The latter never entered into any contract, either expressly or by implication; but they well and truly performed such voyages as their owner directed them to perform. They should not be held liable for breaches of duty of merely their owners. * * * To permit liens such as are now claimed would go beyond the necessities of the admiralty law, would extend liens in violation of the principles stated by Mr. Justice Curtis in The Kiersage, and would assess damages against a vessel not a party to a contract for a particular voyage either directly or by partial execution of that voyage. As to the latter proposition, we may well add that while, so far as the charterer and the owner of the barges were concerned, the charter was continuous; yet the vessels, being inanimate, could not, by the very nature of things, enter into a strictly executory contract. Each of them could be subjected to such duties only as might arise by implication of law from the circumstances of a voyage, or other concrete act, on which it had in fact entered, and therefore, as to them, each of the several voyages was logically independent and single."

[2] True it is that the lien of the ship on the cargo for freight and expenses in connection with its carriage, and the lien of the cargo on the ship for its safe carriage and delivery, are very generally recipro-

cal; but in the nature of things such reciprocity does not and cannot exist in every case. This illustration of that fact is given by the appellee:

"All agreements for the carriage of persons or property by vessels are contracts of affreightment." Benedict (4th Ed.) §§ 199, 201.

Yet where a passenger takes passage on a vessel, and the vessel receives him on board and commences the voyage, but fails to complete it, she is liable in rem for her failure. Obviously in such case such reciprocity does not exist, for there can be no lien on the passenger. The cases of The Eugene (D. C.) 83 Fed. 222, and Stone et al. v. The Relampago, 23 Fed. Cas. 158, No. 13,486, and other cases there mentioned, are illustrations.

We have given very careful consideration to the arguments and the evidence regarding the refusal of the ship to take on her deck the 308,-441 additional feet of lumber and carry it in accordance with her contract, and are of the opinion that we would not be justified in interfering with the finding and conclusion of the trial court respecting that matter. So, too, do we think we are concluded by the findings and conclusions of the learned judge upon the question of damages. To review the record upon the subject in detail would serve no useful purpose.

The judgment is affirmed.